ANNA D. JAMISON ET AL. v. ROBERT S. JAMISON ET AL.

[51 South. 130.]

1. WILLS. *Undue influence. Evidence.*

. Evidence establishing undue influence must of necessity be largely circumstantial, and need not be of that direct, affirmative and positive character required to establish a tangible fact.

2. SAME.. *Same. Right of testator. Unreasonable dispositions. Burden of proof.*

While a testator has the abstract power to dispose of his estate by will according to his settled convictions, yet, where the will is unreasonable and inconsistent with his duties with reference to his property and family, the proponents of the will must give some reasonable explanation of its unnatural character.

FROM the chancery court of, first district, Chickasaw county. HON. JOHN Q. ROBBINS, Chancellor.

Robert S. Jamison, and others, appellees, were complainants in the court below; Mrs. Anna D. Jamison and others, appellants, were defendants there. From a decree in complainant's favor defendants appealed to the supreme court.

The complainants instituted this suit, as contestants, to have the will of A. J. Jamison declared invalid on the ground of undue influence exerted by the defendant, Mrs. Anna D. Jamison, the aged testator's second wife; she and her children born of her marriage with the testator, being made defendants to the suit. The opinion states the facts. See a report of a prior decision in the case on a previous appeal, *Jamison v. Jamison,* 92 Miss. 468, 46 South. 83, 945.

*May, Flowers & Whitfield,* and *N. W. Bradford,* for appellants.

The court below erred in submitting to the jury the question as to whether the will in question was made under undue influence exercised by appellants. No undue influence was shown

in evidence.   Undue influence sufficient to invalidate a will must amount to such a degree of restraint or, coercion as destroys the free agency of the testator.

Personal and confidential relations afford a rational explanation of the generous provisions of a will made in favor of those who had the affections of the testator.   See Am. Digest, par. 38, 75 N. E. 579; 165 Ind. 672.

Neither advice or consolation, however earnest and insistent, affects a will, unless it be further shown that the freedom of will was in some way impaired and destroyed.   105 N. W. 510.

In order to make a will valid it is not necessary that a testator should name all of his children and give each a portion of his estate.   If he was mentally incapable of understanding the disposition which he was making of his property, and acted freely, it is immaterial as to whom he gave it, whether to his children or to strangers.   If he had a disposing mind and memory, he had a right to do as he pleased with his property: 2 L. R. A. 670, par. 20.

Although the testator may perhaps have been influenced by feelings of resentment and dislike to one or more of his children, and by feelings of affection and attachment towards others, and though these feelings may have influenced him to give his whole estate to certain ones to the total exclusion of the others, this does not invalidate the will.

A will in favor of a second wife to the exclusion of children of the first one was not unnatural, although one of the children was a cripple from infancy, especially where testator had already made provisions for such children.   See 53 L. R. A. 387.

Mr. Gardner in his text on "Wills," writing upon the subject of undue influence, and the relation of husband and wife, writes directly upon the case at bar, citing numerous authorities to support his position.   He says "no presumption of undue influence arises from the fact that a wife is a beneficiary under husband's will, though the will may have been procured by her solicitation and importunity.   See 82 N. W. 293.   As

to the exclusion of the children by a former marriage. *Gwin v. Gwin,* 48 Pac. 295.

Nor will the fact that children were disinherited by the influence of their step-mother invalidate a will. 179 Ill. 545. So evidence that children were kept away from the house of their step-mother, and that the testator had expressed regret at his second marriage is sufficient to go to the jury on the question of undue influence alleged to have been exercised by the wife in regard to the execution of the will. See 28 Colo. 167.

It has been held that mere persuasion which is beyond the bounds of mere suggestion, may be of such a character as not to amount to undue influence. See L. R. A. 1, 166. And again it has been held that the proper and legitimate exercise of an influence fairly and honestly acquired is not the exercise of undue influence and a deed obtained thereby will be sustained if made freely and in the exercise of the maker's judgment. *Jackson et al. v. Rowell,* 3 West, 542.

A just exercise of power, a discreet and proper influence directed to accomplish commendable and lawful ends is an influence to which the law will take no exception but rather encourage and uphold. Applying the law as stated above to the first instruction given for the contestants and in view of the evidence adduced we hold that this instruction should not have been given because it is not bourne out by the facts disclosed in the record.

It should be remembered that not only was the deceased a man of sound mind, a man of sufficient capacity to legally execute a will, but he was a man, it appears, above the average in capacity. He held the position of postmaster up to the time of his death in the town of Houston; he was vice-president of a bank in Houston. The president of the bank and his fellow directors testified that they considered him a man of sound business judgment. Several business men of the town were put on the stand and they all testified that his business judgment was sound and that they had confidence in him. The

testimony does not create even a suspicion that deceased did not have testamentary capacity at the time of the execution of the will. In fact, while this charge was made in the petition, there was no effort made to prove it.

There are many cases to be found in the text-books in each of which it appeared that an old man left his property to his last wife, who cared for him in his declining years, and left nothing to the older children who had established homes for themselves and fastened their affections upon their own families, to the exclusion of their father, and where the will, in such cases, were held valid. See *Kneisel v. Kneisel,* 106 N. W. 1114.

The legal presumption is in favor of the validity of a will, when the person, who is provided for therein, is one with whom the testator had maintained intimate and affectionate relations during his life. *McFadin v. Catron,* 138 Mo. 197; *Harp v. Parr,* 168 Ill. 459, 48 N. E. 113; *Monroe v. Barclay,* 93 Am. Dec. 626; *Waters v. Walers,* 78 N. E. 1, 5; *In re Thorne's Estate,* 7 N. Y. Sup. 198; *Woodward v. James* (S. C.), 51 Am. Dec. 649.

In the case at bar, there is not a scintilla of evidence tending to show that Mrs. Jamison, the second wife of deceased, asked him to make a will in her favor; nor that she used her influence in any way upon the subject of disposing of the property; nor that the disposition of the property was ever discussed between the husband and wife. The incidents described occurred many years ago. Proof of them tends to show that she influenced him, but it does not show improper influence. Besides, the proof is directed at occurrences fifteen or twenty years before the will was executed. It is true the witnesses say they think her influence over him increased as he grew older. This conclusion of the contestants can have no weight whatever, since they do not give the facts upon which their conclusion is based, and it may, for aught we know, be based solely upon the fact that he gave his property to Mrs. Jamison and left them out. This one fact is doubtless sufficient for

their purpose. We say therefore (1) That the proof tends to show only a general influence over the testator possessed by Mrs. Jamison; (2) that this general influence is attempted to be shown to have existed fifteen or twenty years before the will was executed; (3) that no sort of proof is offered to show that even this general influence lasted until the date of the execution of the will; (4) that no proof is offered which tends in the most distant way to show that Mrs. Jamison exerted even her general influence over him to have his will executed in her favor; (5) that no proof is offered which in any way connects her influence with the execution of the will; (6) that no proof is offered which tends in the most remote way to show that she exercised an improper or unlawful influence over him for any purpose whatever; (7) that the proof not only fails to show that she had anything more than a general influence over the deceased, the kind which a wife naturally has over the husband, but it also fails to show in the remotest way that even the influence she used, was used for the purpose of becoming the sole beneficiary under his will; (8) that the proof not only fails to show the existence of any improper or unlawful influence or the use of any general influence in the procurement of the will; but it goes further and accounts reasonably and satisfactorily for the provisions of the instrument offered for probate by showing that the deceased was devoted to his wife and that she was kind and faithful to him; (9) that the proof not only fails utterly to make out a case of undue influence, but overwhelmingly shows the probability of its entire absence.

In further support of our conclusions as to the insufficiency of the evidence offered to make an issue for the jury, we call the court's attention especially to Remsen on the preparation and contest of wills, 382, 384.

The proponents made out their *prima facie* case. This was recognized by court and counsel. There was no motion to exclude; when the proponents rested, the contestants offered their evidence. By proceeding to support their side of the

case, they conceded the fact that the proponents had met the burden resting upon them in the beginning. If the contestants had offered no testimony at all, the court would necessarily have instructed the jury for the proponents.

*R. V. Fletcher* and *R. H. Knox,* for appellees.

This case, on the former appeal, *Jamison v. Jamison,* 92 Miss. 468, was remanded upon a point involving the admissibility of certain testimony, with no intimation from this court that the evidence introduced by the contestants was insufficient to maintain the legal objections to the will. This cause is now once more before the court, and solely upon the question, squarely passed upon by the jury in the court below, whether the testator was unduly influenced in making the will as he did.

The facts in evidence on this present appeal are practically the same as shown in the record on the former appeal. And on the trial preceding such former appeal the jury found in favor of the contestants. In *Dye v. Delaware, etc., R. Co.,* 22 N. Y. 583, it was held by the New York supreme court on a second appeal, where the facts in evidence in the two separate trials were practically the same, that since there had been a former appeal to the court of appeals and the case had by that tribunal been remanded on points other than on the merits of the case, the court of appeals must have held the evidence sufficient to support the verdict, and that this implied holding of the court of appeals was binding on the supreme court. It was there further held that a reversal of the former judgment on the sole ground that error was committed in the admission of certain evidence, was equivalent to holding by the appellate court that the evidence was sufficient to authorize a subsequent recovery. See also *Hastings v. Foxworth,* 34 L. R. A. 221.

Even if this court is not absolutely bound by the previous decision in this case, and even if the doctrine of *res adjudicata* under the former appeal cannot be here successfully invoked, it yet certainly follows that this court will now, only with

greatest reluctance, reverse the judgment of the court below, since two juries have passed on the facts, and the last finding of the jury and subsequent judgment thereon were after the supreme court had declined the opportunity to settle the case by some intimation of its opinion on the facts.

What are the facts here? A. J. Jamison, the testator, was an old man seventy-seven years of age, living in the town of Houston, and, for some time prior to his death, had been in failing health. The will in controversy was made June 17, 1905. He died October 4, 1905. By his first wife he had several children. These children of his first wife are the contestants of this will. During the illness of the testator's first wife, one Ann Woods, a young woman, was employed as a sort of upper servant to assist in the household. She remained in the Jamison home for some time after the death of testator's first wife, and it is indisputable from the record that there was extreme familiarity between this young woman and the testator. At one time, so open was this relation, that the woman was forced to leave the Jamison home; but she soon returned; and, ultimately, and over the earnest protest of the children of testator, she was married to the testator. She acquired over him a powerful influence, and it appears that she constantly persevered in the set purpose, ultimately successful, to alienate the testator from his children born of his first marriage. From some source, probably from her, the testator, in his old age, became possessed with the idea that he had done more for the children of his first marriage than for this young wife and the children which she had borne to the testator. He had made one will whereby all his property was equally apportioned among his wife and children, but this will was unsatisfactory to his second wife, and it disappeared. In its place he made a will which disinherited all his older children and which left all of his estate to his second wife and the children which she had borne to the testator. This latter will was a most

unnatural one, not only because it grossly discriminated against the older children, but because the father owed a special obligation to his older children on account of the fact that the foundation of his fortune rested on the money which his first wife had brought him.

While it is insisted that the proof fails to show that any undue influence was exerted in respect to the particular act complained of, namely, the making of this particular will, yet it is apparent from the lips of the widow herself that the testator mentioned the making of the will to her many times. She testifies that he spoke about it to her two or three times a day, and that he showed her the will and read it over to her. It is shown that she objected to the terms of the first will, especially to the feature that provided for a joint executorship between herself and one of the testator's sons by his first marriage. It thus appears that she did have something to do with the making and unmaking of the will.

The principles that underlie the doctrine of undue influence are very familiar. Hundreds of cases have settled the principles which control in such matters. A great variety of opposing opinions can be collected from the text books, but it yet remains true, as has been often stated, that each case must stand upon its own particular facts and must be addressed to the sound discretion of the court. Judges in various jurisdictions have held upon the particular facts there presented, that undue influence was or was not sufficiently shown, so that no great profit is to be obtained by an extensive citation of authorities. Nothing however, is better settled in this state than that every issue should go to the jury when there is evidence tending in some way to support the issue. *McAlexander v. Puryear,* 48 Miss. 420; *Railroad Co. v. Cantrell,* 70 Miss. 329; *Railroad Co. v. Williams,* 67 Miss. 18; *Harris v. Halliday,* 4 How. 338; *Watson v. Dickson,* 4 Smed. & M. 608.

It was said by this court in a recent case that where the facts in a case are voluminous and the different facts testified

to vary greatly, and even when no member of the court would find as the jury did, the court should not exercise the delicate and difficult function of declaring the verdict of the jury manifestly wrong and that such a declaration should be made only in those rare cases where the evidence shows it to be wrong most convincingly and indubitably.   See *King v. Rowan,* 82 Miss. 1.

We call the attention of the court to a recent case, *Hitt v. Terry,* 92 Miss. 671, in which the verdict of a jury in a will case based on an issue of undue influence was upheld by this court, and in which the sufficiency of facts to support a verdict, and the relevancy of testimony and the significance of an unnatural disposition of the property are all very fully considered.

The question of whether any particular act was the result of undue influence is one in part of fact, and where there is any substantial evidence on the question it must be submitted to the jury.   29 Am. & Eng. Ency. of Law (2d ed.), 109.

It is equally well established that undue influence need not be shown by direct proof, and that in fact it is scarcely ever susceptible of direct proof, but must be gathered from all the circumstances, as such undue influence is not usually exercised in the presence of others.   29 Am. & Eng. Ency. of Law (2d ed.), 110; *Blackman v. Edsall,* 68 Pac. 790; *Elkington v. Brick,* 1 L. R. A. 161; *Trumble v. Gibbons,* 2 Zab. 136; *Taylor v. Kelly,* 68 Am. Dec. 154; 1 Jarman on Wills, 39; *Davis v. Calvert,* 25 Am. Dec. 282; *In re Blair's Will,* 16 Daly, 540; *Whitelaw v. Sims,* 90 Va. 588; *Gilbert v. Gilbert,* 58 Am. Dec. 268; *Walls v. Walls,* 99 S. W. 969; *Krankel v. Krankel,* 50 S. W. 863; *Lishy v. Schrader et al.,* 47 S. W. 611; *In re Holmes Estate,* 70 Pac. 908; 1 Redfield on Wills, 516, 537; *Lynch v. Clements,* 24 N. J. 431; *Gay v. Gillian,* 1 Am. Dec. 719.

The Massachusetts supreme court has held that though the testator be of sound mind, yet from the fact that his wife pretended to be a spiritualistic medium and thereby gained

great influence over him, the jury would be justified in inferring from this fact alone that the will made in favor of the wife was procured by undue influence and fraud. *Baylies v. Spaulding,* 6 N. E. 62; *Ross v. Christian,* 23 N. C. 209; *Marvin v. Marvin,* 3 Abb. Dec. 192; *O'Neil v. Murfay,* 4 Brady, Sur. 311; *In re Budlong's Will,* 27 N. E. 945; *Torrey v. Ferrell,* 4 W. Va. 729; *In re Disbrow's Est.,* 24 N. W. 624; *Bledsoe v. Bledsoe,* 1 S. W. 10; *Rollwagen v. Rollwagen,* 63 N. Y. 504.

A valuable recent case on the subject is *Meier v. Buchter,* 197 Mo. 68, 94 S. W. 883. In that case there was an old man in failing health, cherishing affection for all of his children especially an afflicted daughter. He lived, however, with another daughter, Mrs. Buchter. It appears that from the time Mrs. Buchter entered the household the testator cooled in his affection for his afflicted daughter, and this daughter was finally sent away. There was a prior will that had disappeared. There was no direct proof of undue influence exerted especially upon the making of the will. Held a case of undue influence. The whole case is strikingly like the case at bar in many respects. See also *Re Elster,* 78 N. Y. Supp. 871; *Chambers v. Chambers,* 70 N. Y. Supp. 483; *Hiss v. Weik,* 78 Md. 439, 28 Atl. 400; *Thompson v. Davitte,* 59 Ga. 472; *Sims v. Russell,* 90 Iowa, 656, 57 N. W. 601; *Muller v. St. Louis, etc., Assn.,* 5 Mo. App. 390.

WHITFIELD, C. J., delivered the opinion of the court.

This case is here for the second time. It is a contest over a will, and on both trials in the court below the jury have found for the contestants, and the argument now made is to secure a reversal because the evidence is not sufficient to show that undue influence was used in the procurement of this will.

In the case of *Blackman v. Edsall,* 17 Colo. 429, 68 Pac. 792, a recent well-considered case, the court said: "The chief

complaint and contention of the proponent is that the evidence presented, and upon which the jury based its verdict sustaining its charge of undue influence, was insufficient, by reason of its lacking that affirmative and positive character which is claimed to be necessary. It follows, from the very nature of the thing, that evidence to show undue influence must be largely, in effect, circumstantial. It is an intangible thing, which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires. Subscribing witnesses are called to attest the execution of wills, and testify as to the testamentary capacity of the testator, and the circumstances attending the immediate execution of the instrument; but they are not called upon to testify as to the antecedent agencies by which the execution of the paper was secured, even if they had any knowledge of them, which they seldom have. Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular case. These general rules have been stated and restated in many hundreds of different cases in the courts of every jurisdiction considered authority in this country. Different language is used by the different courts; but one main, underlying principle, whatever the phraseology, is found in all, and that is that the evidence required to establish it need not be—indeed, cannot be—of that direct, affirmative, and positive character

which is required to establish a tangible fact.   The only posi-
tive and affirmative proof required is of facts and circumstances
from which the undue influence may be reasonably inferred."

In another very recent case, *Meier v. Buchter,* 197 Mo. 68,.
94 S. W. 883, 6 L. R. A. (N. S.) 202, the facts were, there
was an old man in failing health cherishing affection for all.
his children, especially an afflicted daughter.   He lived, how-
ever, with another daughter, Mrs. Buchter.   It appears that
from the time that Mrs. Buchter entered the household the
testator cooled in his regard for his afflicted daughter, and this
daughter was finally sent away.   There was a prior will, which
had disappeared.   There was no direct proof of undue influ-
ence exerted especially upon the making of the will.   The
whole case is strikingly like the case at bar in many of its im-
portant facts.   The trial court gave a peremptory instruction
in favor of the will; but the supreme court held that the mere
fact of the will being unnatural in its provisions, coupled with
other, though slight, evidences of undue influence, was suffi-
cient to take the case to the jury.   The court said: "The
courts, too, recognize the fact that testamentary disposition
often comes only in the evening of life, and that idiosyncrasies,.
foolish words, odd notions, and acts 'sounding to folly' in aged
people may be so combed together from far and near, and
scheduled and paraded, as somewhat to show unsoundness of
mind, and yet, fairly considered in the light of everyday ex-
perience, do not establish that infirmity.   However, when all
this has been said, it still remains that, as long as kindness is
esteemed a virtue by civilized people, their laws can neither be
interpreted as essentially unkind, nor are they of such a sour
complexion and so deadly cold in their process as to eliminate
all human warmth of sentiment and all moral duty.   Accord-
ingly it is the sole doctrine of the law that, while a testator has.
the abstract power of disposing of his estate by will according
to his settled convictions or caprice, yet a will, producing re-

sults as those now under judicial scrutiny, is the object of sharp solicitude and jealousy in the courts. When one of old by subtlety took from his brother his father's blessing, and the wronged one was told thereof by his father, it is said: 'And when Esau heard the word of his father, he cried with a great and exceeding bitter cry, and said unto his father, "Bless me, even me, also, oh! my father!" ' Peradventure the law may utter for this child a cry for a blessing which her dumb lips may not utter. We think it does, because such a will, when there is other substantial evidence of undue influence and testamentary capacity, calls for explanation, and such unnatural provisions are submitted to the jury as evidence tending to show lack of testamentary capacity where that is in issue, and may be considered by the jury with all other facts and circumstances in the case upon such issue; that is to say, an unnatural disposition of property, standing alone, may not avoid a will, but the results of such unhappy distribution may be tempered and toned down, possibly to avoidance, by allowing it to be weighed by the triers of fact, along with other facts tending to show undue influence or testamentary incapacity."

In the case of *King v. Rowan,* 82 Miss. 1, 34 South. 325, this court declared that where the facts in a case are voluminous, and the different facts testified to vary greatly in the statement of them by the witnesses, and even when no member of the court would find as the jury did, the court should yet not exercise the delicate and difficult function of declaring the verdict of the jury manifestly wrong, and that such a declaration should be made only in those rare cases where the evidence shows it to be wrong, most convincingly and indubitably. See, also, the case of *Walls v. Walls,* 99 S. W. 969, 30 Ky. Law Rep. 948, where the rule in cases of undue influence is admirably stated.

In 1 Redfield on Wills, 516, it is said, with respect to the unnatural provisions in a will: "Where the will is unreason-

able in its provisions, and inconsistent with the duties of testa-
tor, with reference to his property and family,   \*  \*  \*   this
of itself will impose upon those claiming under the instrument
the necessity of giving some reasonable explanation of the un-
natural character of the will."

Under these well-settled rules, we cannot possibly say that
the verdict in this case is manifestly wrong. Two juries,
under proper instructions from the court, have found for the
contestants, and the judgment is *affirmed.*