## ALEXANDER, et al. *v.* HAMILTON.

Dec. 15, 1952

No. 38569 12 Adv. S. 1 61 So. 2d 683

*Wynn, Hafter, Lake & Tendall,* for appellants.

*Ernest Kellner,* for appellee.

McGEHEE, C. J.

This case involves the alleged invalidity of the purported last will and testament of Miss Annie Lou Alexander who was nearly 82 years of age when she wrote and signed the instrument as a holographic will. But the precise question presented on this appeal is whether or not the case should have been submitted to the jury on the ground of alleged mental incapacity when the issue of devisavit vel non was tried. There were no subscribing witnesses to the instrument on the date of its execution, and none were required under Section 657, Code 1942, if the alleged will was wholly written and subscribed by Miss Alexander at a time when she was competent to execute the same. The proponent Grant Hamilton, appellee on this appeal, offered in evidence the probate proceedings which were had before the chancery clerk on April 2, 1951, and then rested his case. Thereupon the appellants, who were related by blood to the alleged testatrix and who had filed a caveat against the will, prior to the court's approval of the clerk's decree allowing the probate in vacation, introduced 8 or 10 witnesses to establish the alleged mental incapacity of Miss Alexander at the time of the execution of the instrument in question. The proponent then moved to exclude all of the evidence offered by the contestants and for a directed verdict in his favor. The trial judge was then of the opinion that this motion for a peremptory instruction should be overruled. However, on the next morning, after further argument and citation of authorities, he concluded to sustain the motion and to dismiss the contest. It is from that action that this appeal is prosecuted.

The probate proceedings consisted of the petition of the appellee Grant Hamilton, who is the sole beneficiary under the purported will and the executor named therein, asking that the probate be allowed and that he be granted letters testamentary as executor of the estate; and the will offered for probate was attached as an exhibit to the petition together with an affidavit of the notary pub-

lic Rufus Turner and is designated as an "affidavit of subscribing witness", and which affidavit recites that "he personally knew Annie Lou Alexander, deceased, late of Hollandale, Washington County, Mississippi, and that he is familiar with the handwriting of said deceased, and that he has this day examined that certain instrument of writing attached hereto and bearing date of September 19, 1946, and purporting to be the last will and testament of said Annie Lou Alexander, deceased; and that he believes said instrument to be wholly written and signed by the said Annie Lou Alexander in her own handwriting. Further that on the said 19th day of September, 1946, he knew the said Annie Lou Alexander to be above the age of 21 years and of sound and disposing mind, . . ."

When the proponent offered the probate proceedings in evidence upon the trial of the issue devisavit vel non, the contestants objected to the introduction of the affidavit above mentioned, and the ruling of the court on this objection was reserved. ██ █ Thereupon the contestants proceeded with the introduction of their witnesses and during the course thereof they asked permission to introduce the affiant Rufus Turner as an adverse witness so as to cross-examine him in regard to the affidavit. This request was denied and we think properly so, since he was neither a party defendant nor otherwise interested pecuniarily in the outcome of the contest of the will, nor did he come within the rule which permits a litigant to cross-examine a witness which he has offered and has been taken by surprise.

The contestants later introduced the affiant Rufus Turner as their own witness, and proved by him that he accompanied the appellee Grant Hamilton to the home of Miss Alexander on the night of October 26, 1946, at the request of appellee, and that they went to her room where "she had a paper folded back on a desk, and, she said she wanted me to witness her signature, and I said, 'this is already signed' and she said, 'Can't you witness

it' . . . I said, 'Did you write this yourself' and she said she did, I said, 'This is your handwriting', and she said, 'Yes,'—and then I witnessed it.'' He was then asked, ''Was there one paper or two papers you acknowledged or took oath to that night? A. There were two papers. Q. Were either one read or explained to her? A. No, she had the papers turned back,—the paper I remember better she had it turned back so that I could see nothing but her signature.'' There was no one else present that evening except Miss Alexander and the appellee Hamilton and the witness Turner. He does not claim to have been present when the instrument was written and signed by Miss Alexander more than 30 days prior thereto. The witness was further asked, ''Q. Have you ever had any recollection of knowingly making this affidavit—that is (quoting the affidavit which he made before the chancery clerk in the words hereinbefore quoted as having been contained therein), and he answered, ''No, I don't think I was qualified to make that statement. Q. You don't think you had any information on which you could knowingly make that statement. A. I don't think I was qualified to make that statement—. I signed that in March when I did sign all of that—I mean September 1946. Q. You signed it but did not have any information that you would say whether she was of sound or unsound mind in 1946. A. I did think she was of sound mind in 1946—that was my opinion, that she was of sound mind—but for me to say—.'' He further testified in reference to his affidavit that ''In this I think I had reference to the night that I saw her. It wasn't my intent to say that she was of sound mind before that—but I believed that she was.'' He was further asked, ''Q. Could you state whether or not she was of sound and disposing mind on September 19, 1946? A. I could not.'' Aside from these concessions the witness also gave some testimony in favor of the proponent. Thereupon counsel for the proponent asked this witness, ''Did you ever hear anybody in Hollandale say she was

a crazy person? A. Yes, I have. Q. Whom did you hear say that? A. I can't remember, but I heard it.'' The witness further testified that ''if I had it to do over I wouldn't write in there (evidently referring to his affidavit) that she was of sound mind—I would say I believed she was.''

In other words, the witness who had made the affidavit which was filed as an exhibit to the petition for probate, when testifying at the trial, undertook to modify or discount the effect of the affidavit which he had filed as a part of the probate of the will in common form.

When the contestants rested their case the trial judge who had reserved his ruling on the admissibility of the affidavit reached the conclusion that the motion to exclude the same should be sustained and this was accordingly done.

We think that the affidavit was sufficient on its face to entitle the proponent to introduce the same as a part of the probate in common form, but we are further of the opinion that since the affiant does not claim to have seen Miss Alexander at the time the instrument was written and signed by her on September 19, 1946, or shortly prior thereto, and that when he noted on the instrument on October 26, 1946, the words, ''sworn to and subscribed before me . . .'', he also on the same occasion took her acknowledgment to a typewritten deed to her real estate in favor of the appellee, bearing date of September 19, 1946, retaining both instruments in his possession until after her death on March 28, 1951, when considered in connection with the testimony of at least 6 other witnesses to the effect that Miss Alexander was not mentally capable at any time during the year 1946 to have executed a good and valid will or deed, all of these facts and circumstances had the effect of creating an issue for the decision of the jury as to her testamentary capacity, and that, therefore, it was error to have granted the peremptory instruction in favor of the proponent.

The appellants, Walter P. Alexander and Mrs. Alice Keith, the uncle or brother, as to which one the record is not clear, and the first cousin of the alleged testatrix, respectively, in support of the caveat filed by them against the purported will, proved by Duncan Cope, vice-president of the Bank of Hollandale, that Miss Alexander had been sick a great deal and that he considered that "she was a little off—the general community thought so"; that she had gotten up before a church conference and made statements against a minister which he thought a woman in her sane mind would not have made, and that "she tried to give her property away,—tried to give it to Mrs. Holland, and Mr. Holland wouldn't let her take it, and then she turned around and gave it to the Burnettes, and I understand that the court revoked it and gave it back to her." He was talking about her mental condition during the year 1946, and although he cashed her checks at the bank, he said that he realized that he was taking a chance in doing this for her as a customer and local resident.

It was further shown by Mr. and Mrs. R. W. Slay that they lived in the home of Miss Alexander from July 1945 until July 1947, where they had an opportunity to observe daily her mental condition; that in 1946 Miss Alexander was in bed practically all the time, and that on one occasion she ordered these witnesses to leave her home and stated that if they didn't, she would throw a bomb in their room under their child, and that she gave Mrs. Slay some dishes, and later saw them in the latter's part of the house and took them back, and in that connection Mrs. Slay stated, "I figured she just didn't have her right mind at all. I wouldn't say that she was responsible for things she did or said while I stayed there"; and that Miss Alexander would call her at night and tell her that somebody was looking in her window, and, on investigation, she found that there was no one about the house.

It was further shown that Mr. Kelly Drew Alexander, who lived in the small town of Hollandale and who had been married for several years, was asked by Miss Alexander if he was still going with a school teacher who was at her house, naming her, and that it became necessary that she be informed by this relative that he was married and had a family with whom he had been living in the town for several years.

George Angelo, who operated a cafe and had been rooming in the home of Miss Alexander for ten years, testified that she was insane, and that she did not know what she was doing on the night of October 26, 1946, when the appellee and the notary public came to her home, and that immediately after they left, he had to lead her from another bedroom back into her own room. He testified to other facts and circumstances on which he based his conclusion that she was not of sound mind at any time during that year.

The appellee contends that Angelo's testimony is wholly incredible and unbelievable, but we are of the opinion ▮▮ that this was a matter for the consideration of the jury, and especially since he was corroborated by a Mrs. Landrum, a neighbor, as to Miss Alexander's claim that there was something wrong with her head all the time. Then too she further testified that on one occasion Miss Alexander gave her a dozen imported plates and later took them away from her and gave them to a Mrs. Torrey Woods.

Another neighbor, Mrs. Furnace, testified to certain acts indicating unsoundness of mind.

▮▮ Moreover, it was for the consideration of the jury as to whether a person of sound mind would have probably made a deed on the same day that she wrote and signed the purported will whereby she undertook to presently convey to the beneficiary named in the will the very residence and home site where she was living, shown to be worth at least $6,000, more than four years prior to her death and merely in consideration of a promise by

the grantee to place a marker at her grave. Furthermore, it appears that the grantee in the deed and beneficiary under the will was not in any manner related to the grantor and alleged testatrix and he is not shown to have ever rendered her any service that would cause her to feel obligated to him.

The appellant Walter P. Alexander was the sole heir-at-law of Miss Alexander, and the other appellant, Mrs. Alice Keith, was also a near relative who had administered to her needs during her illness, and to such an extent that her said sole heir-at-law assigned to Mrs. Keith a half interest in the estate prior to the filing of the contest of the will. And it was held in Jamison v. Jamison, 96 Miss. 288, 51 So. 130, that the proponent of a will has the burden of giving some reasonable explanation of the unnatural character thereof. This explanation was not forthcoming.

Under the cases of Partee v. Pepple, et al., 197 Miss. 486, 20 So. 2d 73, and Skrmetta v. Moore, 202 Miss. 585, 30 So. 2d 53, it was held that the rule now applicable in chancery as well as at law, under a recent statute, is that when there is a motion to exclude the evidence all of the facts which the testimony fairly tends to establish in favor of the party against whom the instruction is requested, together with all the reasonable inferences to be deduced therefrom, should be assumed to be true. And since we are of the opinion that under this rule such facts and inferences as were disclosed by the evidence on behalf of the contestants were such as to raise an issue of fact for the jury on the question of testamentary capacity, and especially in view of the unsatisfactory testimony of the witness before whom the testatrix undertook to swear to her holographic will—on the issue of whether or not she was of sound and disposing mind at the time of its execution—we have concluded that the cause should be reversed and remanded. And also for the reason that the testimony on the part of the contestants as to when some of the incidents testified to had

transpired is indefinite, we feel that in the interest of justice a reversal and remand for a new trial should be ordered, neither party being entitled to a directed verdict on the record now before us.

Reversed and remanded.

*Alexander, Hall, Kyle* and *Holmes, JJ.,* concur.