BARBER, et al. *v.* McCLURE, et al.

No. 43108          June 8, 1964          165 So. 2d 156

*Chatwin M. Jackson, Crawley & Ford,* Kosciusko, for appellants.

*Crawley, Brooks & Guyton,* Kosciusko, for appellees.

**LEE, C. J.**

This litigation grew out of a controversy over the last will and testament of Miss Ped B. Teague, who died on January 4, 1961, at the age of 92 years. The will, dated January 6, 1958, including the first codicil, dated May 7, 1959, and a second codicil, dated October 20, 1960, was probated in common form in the Chancery Court of Attala County on January 7, 1961. The devisees and legatees therein named were: Elizabeth, Don and Ephraim Wyse, niece and nephews; Mrs. Hilda McClure, a niece; Eugene Howard McClure, Jr., a great-nephew; Lamar Gowan, a second cousin; and Melissa McClure and Dorrie Ann McClure, great-nieces.

Thereafter Mrs. Minnie T. Barber and Mrs. Marian T. Arnett, nieces of the testatrix but not mentioned in the will, together with the three Wyses, devisees and legatees, filed a bill of complaint, making the other named devisees and legatees, together with John D. Guyton, an attorney, as defendants. It was charged, in the bill, that the decedent was under the influence, and subservient to the will of Lamar Gowan; and that the will and codicils were a nullity and should be set aside and held for naught.

The defendants, in their elaborate answer, denied in detail all of the material allegations of the bill of complaint, and prayed for a dismissal of the cause.

An issue of devisavit vel non was made up. The issue was heard by the jury, and it returned a verdict upholding the will. From the .decree entered, only Mrs. Barber and Mrs. Arnett have appealed.

The appellants contend that the court erred in refusing their requested peremptory instruction and in refusing to grant them a new trial on the ground that the verdict was contrary to the weight of the evidence.

The evidence showed that Mrs. McClure, Mrs. Barber and Mrs. Arnett were the children of Charlie Teague, a brother of testatrix; that Don Wyse, Ephraim M. Wyse and Mrs. Elizabeth W. Houser were the children of Mary D. Wyse, a sister of testatrix; and that this brother and sister predeceased Miss Teague. She had lived with O. S. Teague, G. D. Teague and Miss Zel J. Teague, brothers and sister, for many years at the Teague home in the City of Kosciusko, Mississippi, and these relatives were survived by neither spouses nor children. At the time of her death, the testatrix owned an estate of approximately 1250 acres of land and $28,000, all of which was acquired largely through inheritance from the brothers and sisters with whom she had lived, and who had died before her.

Actually, the testatrix had executed a number of wills, with the first in 1938; the second, in October 1947, after the death of her sister Zel; the third, on December 21, 1948; the fourth, on February 4, 1953; the fifth, on April 17, 1953; the sixth, on January 30, 1954; the seventh on January 6, 1958; the first codicil on May 7, 1959; and the second codicil on October 20, 1960. The first and second wills were prepared for the testatrix by Hon. J. D. Guyton, a prominent attorney of Kosciusko, who died in 1957. It is noteworthy that his son, John D. Guyton, actually typed the second will when the son was just beginning the practice of law in the office of his father. Thereafter, until the death of the senior Guyton, he and his father, and another at times,

witnessed the several wills which were prepared either by the father or son, or in collaboration with each other. After the father's death, John D. Guyton prepared the last will and both of the codicils on the dates heretofore mentioned. Attorney Guyton was able to produce either the original or copies of all of the wills and codicils which were executed, published and declared by the testatrix. These several wills were presumably executed to take care of changes that had occurred by reason of death of a beneficiary or otherwise. For instance, in the first will, the testatrix had made her brother Gill and sister Zel devisees and legatees. The second will was made shortly after the death of Miss Zel. This is the time when the testatrix began to provide for different devisees and legatees. In the fourth will the name of Miss Pearl Baine as a devisee to 40 acres of land was omitted, and instead, it was devised to Mrs. Hilda McClure. Mrs. Mary D. Wyse, a sister and beneficiary, had died, and the testatrix left this interest to the Wyse children in her fifth will; and after the change in the name of Eugene Davis McClure to Eugene Howard McClure, Jr., this was designated in the fifth will. In the sixth will, 72 acres of land, devised to the Wyse children, was changed to Mrs. Hilda McClure. On account of a misunderstanding with E. H. McClure, the testatrix dispensed with his management of her farm land and omitted his name from the will. She vested that right in Lamar Gowan. In the first codicil, the testatrix, having subsequently conveyed 10 acres of the land which she intended to devise to the Wyse children, omitted that acreage from their interest. She also devised a small lot to Melissa McClure and removed it from the devise to Mrs. Hilda McClure. In the second codicil another small lot, devised to Mrs. Hilda McClure, was changed to Dorrie Ann McClure. As changes were made from time to time, the number of residuary legatees became smaller.

The appellants maintain that the evidence, offered by them, shows the following: In the 1947 will, Gowan was to receive 120 acres; in 1948, there was the same provision and he was made beneficiary for one-fifth in the residual; in the February 1952 will, there was no change; in the April 1953 will, he was to receive the same land, but was increased to one-fourth of the residual; in the 1954 will, there was no change; but in the 1958 will and codicils, his interest was increased to 400 acres of land and one-third of the residual. He managed the farm beginning in 1957, after authority had been withdrawn from E. H. McClure. He made 4 or 5 of the 184 deposits to the account of the testatrix in the bank. His deposits were in the Fall of the year about the time that settlements were made with tenants. At one time, he carried to the attorney a description of land to be described in a will; but this was a mere change in beneficiaries and was not for his benefit.

Miss Pearl Baine had seen Lamar Gowan frequently at the home of the testatrix, and was told by her that she did not know Mrs. John D. Guyton and had never seen her. The testatrix, on one occasion, pled poverty when she was to pay the nursing bill, and that she gave the money back to her. Besides, this witness said that, on one occasion, Gowan, his wife, a preacher and his wife brought a cake and were manifestly interested in the salvation of the testatrix. (This devisee had been dropped by a subsequent will.)

The witness Poteet, a tenant, said that he dealt with the testatrix until Gowan told him to see Mr. McClure as the testatrix was old; and that Miss Baine was going to get some property which, it turned out, Gowan received. At one time, Gowan told him, "they pulled up a new will". Mrs. Dees had heard the testatrix say that she wanted Mrs. Barber to have her land around Possum Neck. Ollie Harmon testified that testatrix had offered to lend him money, but, when he finally went

to obtain a loan, she said "They think I am too old to do that."

Mrs. Avis Parham, daughter of Mrs. Barber, testified that there was a big argument at one time between Gowan and E. H. McClure because of their jealousy toward each other, and that Gowan suggested that they could work together and there would be plenty for both of them. She had also seen Gowan at the home of testatrix on various occasions. (The alleged conversation, to which this witness alluded, was denied by E. H. McClure). Mrs. Minnie C. Parrish testified that the testatrix complained to her that Mrs. Hilda McClure and Gowan worried her about her will, and besides, that she could not see. She also expressed the hope that they had succeeded in getting it fixed like they wanted it.

On the other hand, the appellees maintain that their evidence showed that no beneficiary at any time was present when the wills were executed or at any conference between the testatrix and her attorneys. None of the beneficiaries ever lived with the testatrix. In none of the wills was anything left at any time to the appellants; and the relations between her and the appellants were somewhat distant. Although old and nearly blind, when the last instruments were executed, the testatrix was able to sign her name to them and was still signing her checks. She had rented 15 to 20 cabins to Negroes, collected the rents, managed the making of repairs, and made sales of that property. Gowan managed some of her farm property for a time, and most of it after the testatrix had discontinued the services of E. H. McClure. The testatrix, however, handled one of her farms herself and collected the rent thereon. She also dealt with one or two Negro tenants. She sold pulpwood herself. The land description, which Gowan carried to the attorney, was for use in a codicil from which he received no benefit. J. D. Guyton was her attorney during his lifetime, and, after his death,

his son, John D. Guyton, succeeded him as such. These lawyers had represented her as executrix of the estates of a brother and a sister.

The banker of the testatrix knew her well, visited in her home and saw her often for many years. He pointed out that she attended to her banking business. Of the 184 deposits to her account, as shown by the ledger, only 5 were made by Gowan. She had no lock box, but entrusted her important papers to her attorneys, and Gowan had no access to them. All of the witnesses to the wills and codicils, except J. D. Guyton, who was dead, testified that Miss Teague was sane and appeared to understand and know everything that she was doing. The attorney testified that he and his father first conferred with her to find out what she wished to do; that the instruments were then prepared; that she knew and understood the persons and objects of her bounty; that the instruments were read to and fully understood by her; that she said they were what she wanted; and that she signed and executed them as provided by law.

The attorneys for the testatrix were never attorneys for Lamar Gowan or any of the beneficiaries in these wills, and they had no social contacts with the parties. According to her physician of long standing, the testatrix was of sound mind and her arteriosclerotic condition caused no loss of memory until her last illness, which did not occur until a substantial time after the last codicil was executed. Her banker, her doctor, and her attorney testified that she was a determined individual, positive, strong willed, and not easily influenced by others.

There were very few visitations by either of the appellants or the Wyse heirs. The evidence of the witnesses for the appellants was disputed in vital particulars. The change in the attitude toward Miss Baine has been noted. Likewise the denials of the versions of Mrs. Parham and Charlie Green Poteet by E. H.

McClure. It should also be said that Gowan never lived in the house or assisted the testatrix in any of her personal affairs.

Appellants emphasize the holding of this Court in Jamison v. Jamison, 96 Miss. 288, 51 So. 130, and Croft v. Adler, 237 Miss. 713, 115 So. 2d 683. In Jamison v. Jamison, the jury found for the contestants of the will and the judgment was affirmed. The opinion adopted an excerpt from Blackman v. Edsall, 17 Colo. App. 429, 68 P. 792, which said, in part, that from the very nature of the thing ''evidence to show undue influence must be largely, in effect, circumstantial. It is an intangible thing, which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires. Subscribing witnesses are called to attest the execution of wills, and testify as to the testamentary capacity of the testator, and the circumstances attending the immediate execution of the instrument; but they are not called upon to testify as to the antecedent agencies by which the execution of the paper was secured, even if they had any knowledge of them, which they seldom have. Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. *As to what is sufficient must depend upon the facts and circumstances of each particular case.*'' (Emphasis supplied).

The case of Croft v. Adler, supra, was documented by a number of authorities from textwriters and opinions of this Court, including Jamison v. Jamison, supra. In that case, the trial court upheld the will although the beneficiaries failed to discharge their burden of proving the will's validity by clear evidence of good faith and the full knowledge of independent consent and action of the elderly testator who was in the hospital at the time. The opinion cited 94 C. J. S., Wills, Sec. 239, pp. 1091-6, as stating the rules concerning·a presumption of undue influence arising from the existence of a confidential relationship between a testator and the beneficiary under a will and stated those to be as follows: "* * * the generally accepted rule is that a presumption of undue influence is not raised and the burden of proof is not shifted by the mere fact that a beneficiary occupies, with respect to the testator, a confidential or fiduciary relation, such as that which exists with respect to a *doctor or a physician, guardian, religious and spiritual adviser, employer, landlord, or a close business relation, such as that of partner, principal, or confidential business manager, although the existence of such a relationship may demand a close judicial scrutiny.* On the other hand, it is the general rule in practically all jurisdictions that undue influence is presumed and the burden of proof shifted so as to require the beneficiary to produce evidence which at least balances that of the contestant, when, in addition to the confidential relation, there exist suspicious circumstances, such as the fact that the beneficiary or person who benefits by the will took part or participated in the preparation or procuring of the will, or actually drafted it or assisted in its execution." (Emphasis supplied.) The opinion also said that Mississippi has uniformly recognized and applied the general rule and cited Meek v. Perry, 36 Miss. 190. Using that and other cases, the opinion stated and reaffirmed this rule as follows: "* * when the presump-

tion of invalidity exists, the rule established in this state is that the beneficiary must show by clear and convincing evidence the fullest deliberation on the part of the testator and the most abundant good faith on the part of the beneficiary, taking no advantage of his influence over testator or of his superior knowledge; and that the testator's act was the result of his own volition and upon the fullest deliberation."

In other cases referred to by appellants, the factual situations were so different that they are of little value in this controversy.

■■ ■ Lamar Gowan's relationship in the present case was not that of doctor, physician, guardian, religious or spiritual adviser, employer, landlord or partner. The issue involved the extent of the relationship and probable influence upon the testatrix, growing out of his representation in the management of some of her farm lands and other acts which the witnesses for the appellants stated that he did, and which, in almost every instance, the witnesses for the appellees denied. In such a situation, the rule, approved in Jamison v. Jamison, supra, must govern, namely: *"As to what is sufficient must depend upon the facts and circumstances of each particular case."* (Emphasis supplied).

■■ ■ It is true that, in the will, the testatrix acknowledged her appreciation to Gowan for his kindnesses and accommodations in many ways to her and her late sister, Zel, and that she stated that she wished to express her appreciation. This alone would be insufficient to establish undue influence. Human emotions are oftentimes governed by likes and dislikes. This Court will not be a party to impaling the trait of gratitude upon a cross of sin and dishonor, for it is mindful of the adage, so truly expressed by the poet, when he said, "Blow, blow, thou winter wind, thou art not so unkind as man's ingratitude."

██ ██ The issue of fact, by instruction fairly announcing the law, was properly submitted to the jury, and the court committed no error in its refusal of appellants' requested peremptory instruction.

██ ██ The Court, from a full consideration of this case, is of the opinion that the verdict of the jury, upholding the will, was adequately and amply sustained by the evidence in this case, and that it was not against the great weight of the evidence.

Consequently, the decree of the trial court must therefore be, and it is, affirmed.

Affirmed.

*Ethridge, McElroy, Rodgers and Patterson, JJ.,* concur.