394 So.2d 323 (1981)
Linda Pennington McDOWELL et al.
v.
Audie PENNINGTON et al.
No. 52421.
Supreme Court of Mississippi.
February 25, 1981.
J. Joshua Stevens, Jr., Tubb, Stevens & Morrison, West Point, for appellants.
Gary L. Geeslin, Robin Weaver, W.H. Jolly, Jr., Threadgill, Smith, Sanders & Jolly, Columbus, for appellees.
Before SMITH, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Linda Pennington McDowell, Freddie L. Pennington, Billy Pennington and Jeannine Pennington Presnall filed a bill of complaint in the Chancery Court of Lowndes County, Honorable Lenore Prather, presiding, against Audie Pennington, James W. Wilder, Jewel Sobley, Dr. Percy Sullivan and John R. Sullivan, Jr., contesting the last will and testament of Hunter L. Ellis. The case was tried before a jury, the verdict and judgment were for the proponents of the will, and the contestants have appealed to this Court.
*324 The appellants assign the following errors in the trial below:
(1) The lower court erred in failing to sustain the motion of contestants for a directed verdict and for a judgment notwithstanding the verdict.
(2) The verdict of the jury was against the overwhelming weight of the evidence.
(3) The court erred in submitting the issue of heirship to the jury since there was no factual issue on same.
(4) The lower court held that the presumption of undue influence arose as a matter of law, but erred in submitting what proof was required to overcome the presumption.
Hunter L. Ellis died November 30, 1976, leaving a last will and testament executed on May 28, 1976. He was approximately fifty (50) years old, and was unmarried at the time of his death. Previously, Ellis inherited a substantial estate from his mother, Stella Carney, in the form of a testamentary trust valued at about five hundred thousand dollars ($500,000), consisting of land and personal property. Audie Pennington was designated trustee and had almost unlimited discretion in the administration of the trust funds for the benefit of Hunter L. Ellis. His powers included management of all land holdings, determination of funds and support for Ellis, and the right to invade the corpus of the trust should he deem same advisable. The trust was to terminate at Ellis' death and the residue and remainder were devised to other beneficiaries. The separate estate of Ellis amounted to between ninety thousand dollars ($90,000) and one hundred thousand dollars ($100,000), in excess of the trust.
The will executed by Ellis designated Audie Pennington executor and James W. Wilder, Pennington's son-in-law, alternate executor. Among other things, the will provided that specific items of personalty be bequeathed to Ellis' girlfriend, Jewel Sobley, for life, with the remainder to Audie Pennington. The bulk of the estate, which included both real property and personalty, was to be held by Audie Pennington in trust for Jewel Sobley, with broad powers to be exercised by him and with the right to invade the corpus of the trust for the support of Miss Sobley. Upon her death, the trust would terminate and the corpus would pass to Audie Pennington, if living, and, if deceased, to his issue.
The will was admitted to probate in December, 1976, and in July, 1977, the contestants/appellants, claiming to be the legal heirs of Hunter L. Ellis, filed the will contest.
The proof is substantial that Hunter L. Ellis was physically and mentally ill about the time the will was executed, and for a long period prior thereto, as a result of excessive indulgence in alcoholic beverages. He underwent an operation for partial removal of his liver in 1970 and the secondary cause of his death was cirrhosis of the liver. The proof indicated that Pennington was the manager of Carney Real Estate Company, which was owned by Mrs. Stella Carney during her lifetime and which constituted the trust holdings of her estate property and funds. As such manager, Pennington wrote all checks for the support of Ellis, made the determination as to what Ellis should have, did all things toward caring for him, and, in addition, paid Ellis three hundred dollars ($300.00) per month from the trust estate. Pennington drew four thousand dollars ($4,000) per year from the trust for such services. Thus, without contradiction, a confidential relationship existed between Pennington and Ellis.
Prior to the execution of the will involved here, Mr. Robin Weaver, attorney, had drawn and redrawn will instruments for Ellis. Also, he had been the private attorney of Pennington and Wilder for a number of years. Prior to drafting the will, Wilder came to Attorney Weaver's office and told him that Ellis desired to change his last will and testament and Wilder supplied him the information to be used for that purpose. After drawing the instrument, Attorney Weaver gave same to Wilder, who delivered it to Ellis, for examination and determination of its accuracy. Wilder brought the instrument back to Attorney Weaver on *325 two subsequent occasions for changes which he said Ellis desired. Attorney Weaver never saw or talked with Ellis, and did not advise him concerning the will. He simply wrote the instrument according to the information given him by Wilder. Weaver testified by deposition that before Wilder came to his office, Pennington telephoned him and said that Ellis wanted to change his will.
The appellants contend (1) that the court should have peremptorily instructed the jury to find for the contestants and (2) that the jury verdict was against the overwhelming weight of the evidence.
Where there is a confidential relationship such as exists here, a presumption arises that the proponent(s) of the will exercised undue influence over the testator and the proponent(s) must overcome that presumption by clear and convincing evidence. The confidential relationship must result in a dominant influence by the beneficiary over the testator. In Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), holding that Alder's will was a result of undue influence, the Court said:
"[W]here a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence." 237 Miss. at 722-723, 115 So.2d at 686.
Citing from Meek v. Perry, 36 Miss. 190 (1858), the Alder Court further said:
"[T]he law watches with the greatest jealousy transactions between persons in confidential relations and will not permit them to stand, unless the circumstances demonstrate the fullest deliberation on the part of the testator and the most abundant good faith on the part of the beneficiary. Hence the law presumes the existence of undue influence, and such dealings are prima facie void, and will be so held `unless the guardian show by clearest proof' that he took no advantage over the testator, and the cestui's act was a result of his own volition and upon the fullest deliberation." 237 Miss. at 724, 115 So.2d 687.
In the case of In re Will of Moses, 227 So.2d 829 (Miss. 1969), the testatrix was a 54-year-old woman suffering from chronic alcoholism and other illnesses. She was a strong personality, but had an affair with an attorney fifteen (15) years younger than she and devised him practically all of her estate. Although she obtained a different attorney to draft her will, this Court held that the undue influence could not be overcome by obtaining services of the second attorney, since the nature and substance of the counsel and advice given her by him was not established. Further, in the absence of such proof, the evidence was insufficient to rebut the presumption of undue influence. The Court said:
"It is clear from his own testimony that, in writing the will, the attorney-draftsman, did no more than write down, according to the forms of law, what Mrs. Moses told him. There was no meaningful independent advice or counsel touching upon the area in question and it is manifest that the role of the attorney in writing the will, as it relates to the present issue, was little more than that of scrivener. The chancellor was justified in holding that this did not meet the burden nor overcome the presumption." 227 So.2d at 834.
In addition to the facts stated above, during the period when Attorney Weaver was receiving information from which to draft the will, Ellis, in talking with Wilder, decided to delete from the will a parcel of real property valued at eighty-five thousand dollars ($85,000). He said, "I'll just give it to Jean," and he executed a deed of conveyance conveying that property to her. [Jean is the daughter of Pennington and the wife of Wilder.]
The record indicates from evidence and inferences that Pennington had some involvement in the procuring, preparation *326 and execution of the will, either by himself or through his son-in-law, Wilder. We are of the opinion that the appellees failed to establish by clear and convincing proof that undue influence was not exercised over Ellis and we conclude that the lower court should have peremptorily instructed the jury to find for the contestants/appellants.
We have considered the record and other assignments of error and they either have no merit or it is not necessary to discuss them in view of the above decision.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P.JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ. concur.