446 So.2d 575 (1984)
Fred R. MURRAY, Sr.
v.
Laura Bell M. LAIRD, et al.
No. 54085.
Supreme Court of Mississippi.
February 22, 1984.
*576 K. Maxwell Graves, Jr., Meadville, W.O. Dillard, Bettie Ruth Johnson, Jackson, for appellant.
H.B. Mayes McGehee, McGehee, McGehee & Torrey, Meadville, for appellees.
Before PATTERSON, PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
This appeal challenges the cancellation of a deed in a suit brought by six siblings against their brother, Fred R. Murray, Sr. on the ground of the fraud and undue influence exerted by their brother upon their deceased father, Eli Murray. The deed reserved a life estate in the father with remainder interest to the appellant Fred Murray, Sr. in an eighty acre tract of land. The Chancery Court of Franklin County found that Fred Murray, Sr. occupied a close confidential relationship with his father, and that the proof failed to overcome the presumption of undue influence *577 arising from that relationship. From the cancellation of the deed by the chancery court, this appeal is sought by Fred R. Murray, Sr., assigning as error:
(1) That the trial court erred in finding that the presumption of undue influence existed under these facts; and
(2) That, assuming that the court was correct in applying the presumption of undue influence, then the trial court erred in finding that the appellant had not overcome the presumption by clear and convincing evidence. We affirm the chancery court.

I.
To the marriage of Eli Murray and Lizzie Murray were born eight children: Laura M. Laird, Helen M. Delaney, Lizzie M. Arnold, Vertie M. Cothren, Nell M. Pickett, Ike Murray, Fred Murray, and Darlene M. Beck. Lizzie Murray died in 1951, and Eli Murray continued to live at the homeplace for some twenty-five years until he went to a nursing home at age 87.
In December, 1976 a trust agreement was signed by Eli Murray designating Ike Murray as trustee. Ike Murray transferred funds of his father into the trust account by a check signed by the "mark" of Eli Murray with attesting witnesses. However, upon learning that there was some disagreement from his siblings about the trust, Ike asked to be removed as trustee in January, 1977.
After the trust was terminated, Eli Murray was hospitalized. Fred Murray began using Eli's money for Eli's expenses with the assistance of his sister Helen until a dispute arose. Thereafter, the business and financial management of Eli's monies were controlled by Fred Murray upon whom Eli was dependent. Fred Murray also handled mineral leasing on the real estate.
The transaction that gave rise to this lawsuit was not the financial management by Fred, but was the inter vivos deed transfer by Eli Murray to Fred covering the land.
In this regard on October 20, 1978, Fred Murray signed his father out of the nursing home and carried him to the law office of Maxwell Graves with whom Fred Murray had previously spoken. Mr. Graves advised Fred that he would not prepare the deed until Eli's competency to sign the deed was discussed with Eli's doctor. The doctor did not see or talk with Eli on that date but stated that if Eli could hear, he could understand. Eli Murray told the attorney to prepare a deed to Fred with the reservation of a life estate in himself. The deed was read and explained to Eli Murray before he signed it by the attorney and his secretary.
The record shows that the grantor was 89 years old, a resident of a nursing home, with poor eyesight and hearing, unable to read or write, and had health problems that required surgery in recent years.
A significant fact was that the attorney did not know whether he represented the father or son, but the fee for preparation of the deed was paid by Fred Murray from his own funds. Fred testified that the transfer was his father's desire. The testimony is somewhat confused as to Fred's presence in the room at the time of the execution. The attorney testified that Fred was not present; his secretary testified that Fred was "in and out" of the office.
The deed was recorded the same day of execution, and its recordation was discovered by the other siblings during the lifetime of Eli. No legal action was taken by them except to talk to an attorney. Additionally, the existence of the trust agreement executed by Eli in 1976 was discovered by Fred before Eli's death. In 1980 Fred employed Maxwell Graves to investigate the validity of his deed in view of the trust agreement. Fred paid $500.00 for legal fees from his father's monies for this research on the direction of his father. Testimony from witnesses indicated that Eli's expressed wishes made during his life were to equally divide the land among his children.
The chancellor found the relationship of father and son to be one of a close confidential *578 nature which gave rise to the presumption of undue influence. He further found that the presumption was not overcome by clear and convincing proof. The deed was cancelled.

II.
The law in this state on fiduciary or confidential relationships and undue influence is well settled.
This Court held that a confidential relationship did not have to be a legal one, but that the relation may be moral, domestic, or personal. Hendricks v. James, 421 So.2d 1031 (Miss. 1982); Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932). The confidential relationship arises when a dominant over-mastering influence controls over a dependent person or trust, justifiably reposed. Hendricks v. James, supra, McDowell v. Pennington, 394 So.2d 323 (Miss. 1981), Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959).
Its application has been made to both inter vivos and testamentary transactions. Meek v. Perry, 36 Miss. 190 (1858) Croft v. Alder, supra, In re Will of Moses, 227 So.2d 829 (Miss. 1969), (as to testamentary transactions), Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926) (as to inter vivos transfers).
The early 1858 case of Meek v. Perry, supra, traced the history of undue influence from our common law origins and established that in situations involving confidential relationships, a presumption of undue influence arises. That presumption could be rebutted only by showing the fullest deliberation on the part of the testator and abundant good faith on the part of the beneficiary.
The case of Ham v. Ham, supra, added an additional requirement in overcoming the presumption of undue influence in confidential relationship cases. The third requirement necessary to rebut the presumption of undue influence was to have the grantor/testator seek independent advice and counsel of a third party devoted wholly to the interests of the grantor/testator. See In re Will of Moses, supra.
Thus, our law may be summarized to state that when the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
(3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest. Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964). Our most recent pronouncement of these unwavering principles were discussed in Hendricks v. James, supra, in a detailed opinion by Justice Hawkins.
The question which the appellant here asks is the type of proof necessary to overcome the presumption. Counsel asks for guidelines from this Court; however, this Court cannot set forth guides that fit all situations. Of necessity, each case must be determined individually on its merits. The evidence of undue influence is usually circumstantial and intangible. Phillips v. Ford, 250 Miss. 425, 164 So.2d 908 (1964). Affirmative and positive proof is needed to overcome this presumption.
However, from case decisions some affirmative and positive factors emerge that may be considered as significant to overcome the inference of the presumption.
(1) Important factors on the question of good faith are, (a) the determination of the identity of the initiating party in seeking preparation of the instrument, (b) the place of the execution of the instrument and in whose presence, (c) what consideration and fee were paid, if any, and (d) by whom paid, and (e) the secrecy or openness given the execution of an instrument. The Court recognizes that prior disclosure of a donation is not a prerequisite to its *579 validity; but the disclosure of intent made prior to execution of an instrument helps dilute the undue influence presumption.
(2) Factors important to address the grantor/testator's knowledge, at the time of execution of any instrument are (a) his awareness of his total assets and their general value, (b) an understanding by him of the persons who would be the natural inheritors of his bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect that prior will or natural distribution, (c) whether non-relative beneficiaries would be excluded or included and, (d) knowledge of who controls his finances and business and by what method, and if controlled by another, how dependent is the grantor/testator on him and how susceptible to his influence.
The guidelines of our prior cases suggest that the testator/grantor should give a thoughtful deliberation to all of these factors. No set amount of time is stated as required, but a positive factor to overcome the undue influence presumption is a mature and thoughtful weighing of the legal consequences of a grantor/testator's action.
(3) Turning now to the last factor to be discussed, (a) advice of a competent person, (b) disconnected from the grantee, and (c) devoted wholly to the grantor/testator's interest, we note three factors to meet. The advisor has to have conferred with the grantor/testator prior to the document drafting. McDowell v. Pennington, supra. However, "independent" advice in this sense means advice separate and apart from the beneficiary, both in the initiation and execution of the instrument.
The participation of the beneficiary/grantee, or someone closely related to the beneficiary, arouses suspicious circumstances that negate independent action. McDowell v. Pennington, supra, Croft, supra.
As a necessary adjunct to "advise and counsel", an advisor must have (a) knowledge upon which to base advice. Therefore, all factors previously named above with reference to the grantor/testator's full knowledge of his circumstances and the grantee/beneficiary's good faith must also be delved into by the advisor as a basis for his recommendation. The advisor needs to (b) know of the relationship of the grantor/testator to any beneficiary/grantee and the purpose or reason of an unequal division or distribution to donees/heirs of the same class, (c) the relationship of the non-blood donee and the duration of that relationship; (d) the relationship, or lack of relationship, to kinsmen, (e) knowledge of tax consequences (f) information as to the marital background, age, physical and mental health of a grantor/testator. (g) Inquiry by the advisor into whether the disposition is the free and voluntary act of an independent thinking, strong willed individual or whether the decision is imposed by the dominance of an over-reaching person will help him render better advice. All these factors will help the advisor learn of antecedent agencies that gave rise to the presumption of undue influence.
The advisor does not have to be an attorney, but must be competent to advise and be wholly dedicated to the interests of the grantor/testator. If the chosen advisor does not have ability to answer all questions, persons with specialities can be secured.
It can be noted that consultation with an attorney does not necessarily overcome the presumption. The advisor has to be more than a mere scrivener; he has to render meaningful independent counsel. Moses, supra. But the grantor does not have to make his acts conform to the advice however. Montgomery v. Willbanks, 198 Okl. 684, 181 P.2d 240 (1947).
Even after all testimony relating to these named factors are received, it is still to the trier of fact to judge the credibility of the witnesses and the worth of their testimony. Moses, supra.

*580 III.
Applying these principles to the facts of this case, it is clear that the trial judge was correct in cancelling the deed in question.
The grantee in this situation handled the business and financial transactions of his father. The father was old, of poor health, with poor eyesight and hearing. The grantee participated in the initiating, execution, and payment of the deed in question. The proof was sufficient to create the presumption of undue influence at the time of the execution of the deed.
The proof offered by the grantee to rebut the presumption showed that the attorney who was secured and paid by the grantee and the attorney's secretary, were the only advisors. There was testimony by the attorney that he did not know which was the client  the father or the son. No independent advice was proven. The inquiry by the attorney of the mental competency of the father relates to testamentary capacity, not undue influence, although that is also a factor to be considered in undue influence cases.
Therefore, we conclude with the chancery court that the grantee failed to meet his burden of proof by clear and convincing evidence that the grantor received disinterested advice from an independent person wholly dedicated to the interests of Eli Murray. The deed was correctly cancelled.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.