497 So.2d 815 (1986)
In the Matter of the Last WILL & Testament OF Dimple POLK, Deceased.
Mrs. Texie LEE
v.
ESTATE OF Dimple POLK, Deceased.
No. 55998.
Supreme Court of Mississippi.
November 5, 1986.
*816 Clarence R. Scales, Scales & Scales, Jackson, for appellant.
R.E. Swindoll, Sr., Cotten Ruthven, Waller & Waller, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
This is an appeal from a judgment of the Chancery Court of Hinds County wherein the chancellor found the last will and testament of Dimple Polk, deceased to be valid. The contestant was the decedent's mother; siblings of the half-blood and decedent's father were made parties. The only appellant here is Mrs. Texie Lee, mother of the deceased, alleging the following as error:
The chancellor erred in holding that the purported will of Dimple Polk, deceased, was not procured by undue influence.

I.
Dimple Polk, a resident of Jackson, Mississippi died August 1, 1983, leaving an estate valued at $277,000. In a will executed July 8, 1983, Dimple Polk left all her property, real, personal and mixed, to her sister, Dorothy Polk, except for bequests of monetary amounts to half-sisters and half-brothers. The estate of this decedent, a large part, came from oil interests given to the decedent by her father.
Dimple and Dorothy Polk were born to Zelus P. Polk and Texie Polk (Lee). The parents divorced when the girls were quite young and Texie Lee remarried having five children in her second marriage.
Dorothy Polk married Lawrence Polk and lived in California. Dimple Polk never married and lived and worked in Jackson most of her life. Dimple temporarily moved to California and spent weekends with her sister Dorothy while being treated for emotional depression.
During treatment in 1976, Dimple Polk was found to be emotionally stable. The doctor prescribed some relaxants for her but Dimple had not received treatment since 1977.
After Dimple moved back to Mississippi, she moved into a home with her mother, paying $35.00 per month room and board. Mrs. Lee sold her home to her son and moved into a home purchased by Dimple. Dimple continued to live with Mrs. Lee until her death  over some twenty years.
In 1982 Dimple contracted cancer and was in remission, after surgery, until early 1983. In late June, 1983, Dimple visited with her cousin, Dr. Charles Allen in Pascagoula. Dimple frequently confided with Dr. Allen in procuring second opinions on all her medical problems. Dr. Allen recognized that the cancer was no longer in remission and that Dimple had only a short while to live. He called Dimple's sister, Dorothy, in California to inform her about Dimple's conditions. Dorothy Polk arrived in Mississippi on July 4.
On July 7, Dimple and Dorothy drove to visit Dr. Allen. While there, Dr. Allen was discussing the execution of his own will with Dimple. Dimple, who knew no attorneys in Jackson (as per Allen's testimony) asked Allen to arrange a meeting with his lawyer to execute her will. Allen called a lawyer with whom he was acquainted. Dorothy, Dr. Allen and Dimple went to her office. Dr. Allen waited at the secretary's office, but Dimple asked that Dorothy sit in the room with her while talking to the attorney. According to the attorney and Dorothy, Dorothy was not involved in the conversation concerning the bequests and only at one point did Dorothy ask from *817 where she would get the cash to pay the bequests. The attorney, another witness, and Dimple executed the will in the privacy of the attorney's office. The attorney testified that Dimple demonstrated no signs of illness or mental incapacity at the time.
Dimple and her sister Dorothy returned to Jackson; Dorothy had possession of the will. Sometime thereafter, Dimple and Dorothy obtained access to most of Dimple's insurance policies and accounts in order to place Dorothy's signatures on those documents.
Although Dimple returned to work for a few hours a day until July 12th, her health deteriorated. She went into the hospital on July 31st and died on August 1st.
At trial, testimony revealed that several friends and members of Dimple's family knew about the will and had encouraged Dimple to make a will.
The testimony of several witnesses indicated the will was drafted just as Dimple specified.
All witnesses at trial including contestants of the will, indicated that Dimple was alert and in full control of her thoughts until the time of her death.

II.
Did the chancellor err in holding that the purported will of Dimple Polk, deceased, dated July 8, 1983, was not procured by undue influence?
The Mississippi law on fiduciary and confidential relationships is summarized in the decision of Murray v. Laird, 446 So.2d 575 (1984), at page 578, as follows:
This Court held that a confidential relationship did not have to be a legal one, but that the relation may be moral, domestic, or personal. Hendricks v. James, 421 So.2d 1031 (Miss. 1982); Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932). The confidential relationship arises when a dominant over-mastering influence controls over a dependent person or trust, justifiably reposed. Hendricks v. James, supra, McDowell v. Pennington, 394 So.2d 323 (Miss. 1981), Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959).
Its application has been made to both inter vivos and testamentary transactions. Meek v. Perry, 36 Miss. 190 (1858) Croft v. Alder, supra, In re Will of Moses, 227 So.2d 829 (Miss. 1969), (as to testamentary transactions), Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926) (as to inter vivos transfers).
The early 1858 case of Meek v. Perry, supra, traced the history of undue influence from our common law origins and established that in situations involving confidential relationships, a presumption of undue influence arises. That presumption could be rebutted only by showing the fullest deliberation on the part of the testator and abundant good faith on the part of the beneficiary.
The case of Ham v. Ham, supra, added an additional requirement in overcoming the presumption of undue influence in confidential relationship cases. The third requirement necessary to rebut the presumption of undue influence was to have the grantor/testator seek independent advice and counsel of a third party devoted wholly to the interests of the grantor/testator. See In re Will of Moses, supra.
Thus, our law may be summarized to state that when the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
(3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest. Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964). Our most recent pronouncement *818 of these unwavering principles were discussed in Hendricks v. James, supra, in a detailed opinion by Justice Hawkins.
The Murray case involved a case in which the trial court properly found as a fact the existence of a confidential relationship. The instant case factually represents the opposite conclusion. No fiduciary relationship is charged, but it is alleged that the sister Dorothy and the decedent were in a confidential relationship. The chancellor found otherwise stating that the trip to Pascagoula would have been the only occasion when Dimple's sister could have exerted such alleged undue influence. The chancellor noted that other relatives could have had influence on the decedent, but that they did not. The chancellor stated:
It is difficult for the Court to say that there was ever a confidential fiduciary relationship between Dimple Polk and Dorothy Polk. * * * The only period of time that Mrs. Dorothy Polk would have had to have influenced her sister, Ms. Dimple, in any way in making the will that she made would have been on the ride from Jackson to Pascagoula on July 7th. I don't believe there was a fiduciary relationship between Dimple Polk and Dorothy Polk and I don't believe there was any undue influence of any kind. It may could have been that Dr. Allen might have influenced her if he had tried but all the testimony is that he didn't try to influence her at all.
The only evidence relied upon to support the allegation of a confidential relationship is the fact that (1) the beneficiary and decedent were sisters of the whole-blood, and (2) the two sisters took a trip together to Pascagoula. Looking to the existence of a family relationship, the mere fact that a family relationship exists does not give rise to a confidential relationship. It is true that a confidential relationship may be of a legal, moral, domestic, or personal basis. Murray v. Laird, supra. But it is the dominant, overmastering influence over the dependent party, justifiably reposed, that gives rise to a presumption of undue influence.
[I]n determining whether or not a fiduciary or confidential relationship existed between two persons, [this Court has] looked to see if one person depends upon another. It may or may not be a legal relationship... .
In Re Will & Estate of Varvaris, 477 So.2d 273, 278 (Miss. 1985); See also Murray v. Laird, 446 So.2d 575 (Miss. 1984); Harris v. Sellers, 446 So.2d 1012 (Miss. 1984).
Regarding the second circumstance, the trip to Pascagoula, the record reflects that the two sisters went to visit a relative and his new wife, not to make a will; that it was the relative who urged the execution of the will; that the relative did not benefit personally from this suggestion. Other friends and relatives substantiated that the decedent's expressed intent was in keeping with the terms of the will.
This Court concludes that the chancellor was correct in finding no circumstances to prove confidential relationship. It therefore follows that without the establishment of a confidential relationship, there is no presumption of undue influence. Nor was there proof of undue influence absent a confidential relationship.
A chancellor's finding of fact on a controverted issue may not be set aside or disturbed on appeal unless it is evident from the record that he is manifestly wrong. Spain v. Holland, 483 So.2d 318 (Miss. 1986); Mathews Brake Hunting & Fishing Club, Inc. v. Sneed, 475 So.2d 811 (Miss. 1985). It appears that there was substantial evidence supporting the chancellor's finding of fact and that it should not be disturbed on appeal. This case is affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.