507 So.2d 27 (1987)
In the Matter of the Will and Testament of Edward B. LAUNIUS.
Linda Launius GALLAGHER
v.
Gladys WARDEN, the University of Mississippi Foundation, Administrators of the Stephen E. Launius Scholarship Fund, Martha Brown and Mary Louise Holmes.
No. 56222.
Supreme Court of Mississippi.
February 18, 1987.
Rehearing Denied June 3, 1987.
*28 Abe A. Rotwein, Jackson, for appellant.
Grady F. Tollison, S. Allan Alexander, Patterson, Tollison, Alexander & Powers, Oxford, Walter Brown, Brown, Jenkins & Carby, Natchez, for appellee.
Before WALKER, C.J., DAN M. LEE and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
This appeal involves a will contest wherein the Chancellor granted defendants' motion for summary judgment alleging that there was no genuine issue of material fact as to the validity of the will, that the decedent had testamentary capacity and that there was no proof of undue influence placed upon him. Plaintiff appeals and assigns as error:
I. In granting Motions for Summary Judgment of the Respondents', Gladys L. Warden; Stephen E. Launius Scholarship Fund, Administered by the University of Mississippi Foundation; Martha B. Brown; and Louise Holmes.
The cause should have proceeded to trial in order for a jury to determine: (a) Whether duress has been practiced by one or more of the above named purported heirs; and whether the deceased was competent to make a Will and knew the objects of his bounty; and, (b) Whether the purported testament was a "Will or no Will."
II. In rejecting the express terms of Rule 56 of the Mississippi Rules of Civil Procedure, with regard to the ten-day notice to the Contestant, prior to a hearing.
We deem it unnecessary to address other assignments of error, as the remainder do not constitute reversible error nor are they pertinent to the Court's adjudication of the presence of undue influence or lack of testamentary capacity in a contest to will.

I.
The testator of the will in question, Edward B. Launius, was a geologist in the oil and gas business. Launius had been married and divorced twice, and his first wife bore him a daughter, Linda Launius Gallagher, (who is the contestant of Launius' will based on the grounds of duress and mental incompetency). Proponents admit her status as the natural daughter of the testator.
Launius' second wife bore him two children: a single son who died of cancer in 1981, and a single daughter who committed suicide.
Approximately two months before January 28, 1983, the date upon which Edward B. Launius executed his last will and testament, testator broached the subject of drafting a will with one Dale McKibben who would serve as his attorney. McKibben had known Launius some twenty years both personally and in a professional manner. Over the next two months, Launius sought McKibben's advice in the drafting of the will.
On January 27, 1983, McKibben drafted a will as dictated by Launius, and presented the latter with a rough draft for his perusal and signature. The following day, Launius returned to the office to execute the will in final form, the only change having been made being the addition of the name "Rex Hewitt" as executor in a space which had been left blank.
The will purported to leave 50% of Launius' estate to his sister, Gladys Warden, should she survive him, then 25% to the Stephen E. Launius Scholarship Fund, 5% to his maid Louise Holmes, and 20% to Mrs. Martha Brown of Natchez, Mississippi. The will then stipulated that should his sister not survive him, Launius left 50% of his estate to the Scholarship Fund, 10% to Holmes, and 40% to Brown. At the time of *29 Launius' death, Gladys Warden was alive; hence, the first portion of the will apparently is in effect.
In accordance with our law, the will was signed at the bottom by the testator, and attested to by two (2) or more "credible" witnesses in his presence. When the contest to will was filed, the subscribing witnesses filed affidavits which, in response to interrogatories propounded by the plaintiff, attested to the suitable testamentary capacity of Launius as well as the lack of any undue influence at the time of his making the will. McKibben's testimony concurs with their response.
Launius died six months later on July 27, 1983. The will was admitted to probate in the Chancery Court of the First Judicial District of Hinds County on August 4, 1983. The complaint for will contest giving rise to this appeal was filed on January 20, 1984.
Motions for summary judgment were filed by the proponents of the will at varying times (to be discussed infra in conjunction with an assignment of error).
On September 18, 1984, one day prior to the scheduled trial on the merits before a jury, the court granted all the proponents' motions for summary judgment and the final decree recited that the depositions, interrogatories, answers, requests for admissions, and affidavits submitted in opposition to the motions by proponents failed to show a genuine issue of fact material to contestant's claim, and that, under Rule 56 of the Mississippi Rules of Civil Procedure, the judgment was entered and contestant's claim dismissed with prejudice and costs taxed to contestant.
From said final decree, this appeal was taken by the contestant.

II.

A.
The case sub judice presents this Court with a first time approach at application of the new rules of civil procedure to a will contest between parties  an action formerly guided by general statutory and case law. At the outset, we would note Rule 81(a)[1] does not prevent usage of the Mississippi Rules of Civil Procedure within the context of a contest to will. By its own terms, Rule 81(a) prohibits procedural change within the confines of certain statutes, disallowing application of the rules where the statutes clearly govern the action. Rule 81(a) does not, however, alter the substantive issues of a case; hence, its self-proclaimed limited applicability.
While the question of "devisavit vel non" ("will or no will") is the primary issue in a will contest, and under Miss. Code Ann. § 91-7-19 (1972), either party to a will contest has an automatic right to a jury trial, where no genuine issues of material fact have been presented in the pleading stage a motion for summary judgment is properly granted. Hence, the contestant of the will in the action at bar faces a two-prong test for the voiding of the document: She must follow our general case law in putting on proof that there is no will, and in the process of fulfilling this requirement appellant must meet the standards set forth under M.R.C.P. 56 by raising general issue of material facts sufficient to defeat appellee's motion. However, her burden has by no means doubled as the two prongs of the test she must meet are not mutually exclusive: in fact, she actually follows the same route taken by contestants of a will prior to the passage of the Mississippi Rules of Civil Procedure.
Appellees, as proponents of the will, have the burden of proving the will throughout. Harris v. Sellers, 446 So.2d 1012 (Miss. 1984). They meet this burden by showing the will was duly executed and admitted to probate. Id. at 1014. When the will is admitted to probate, proponents put on prima facie evidence that the testator *30 had testamentary capacity and further that no undue influence was placed upon him. Id. The burden of going forward then shifts to contestant, who must overcome the presumption raised by proponents that testator had testamentary capacity, (and, therefore, that the testator's execution of the will was a free and voluntary act). Id.
When the Mississippi Rules of Civil Procedure come into play within a situation involving a contest to will, where movants for summary judgment (appellees) have shown there is no genuine issue of material fact vis-a-vis probate of the will, contestant, as the adverse party, "may not rest upon the mere allegations of denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).
Thus, whether it be termed proof of testamentary capacity or undue influence, or genuine issue of material fact as to testamentary capacity or undue influence, Gallagher's burden merits the same standard of review.
A presumption of undue influence "extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority influence on the other." Sheehan v. Kearney, 82 Miss. 688, 21 So. 41 (1896).
The Mississippi law on fiduciary and confidential relationships is summarized in the decision of Murray v. Laird, 446 So.2d 575 (Miss. 1984), at page 578, as follows:
This Court held that a confidential relationship did not have to be a legal one, but that the relation may be moral, domestic, or personal. Hendricks v. James, 421 So.2d 1031 (Miss. 1982); Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932). The confidential relationship arises when a dominant over-mastering influence controls over a dependent person or trust, justifiably reposed. Hendricks v. James, supra, McDowell v. Pennington, 394 So.2d 323 (Miss. 1981), Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959).
Will of Polk, 497 So.2d 815 (Miss. 1986), cites the early 1858 case of Meek v. Perry, 36 Miss. 190 (1858), in which the Court traced the history of undue influence from our common law origins and established that in situations involving confidential relationships, a presumption of undue influence arises. That presumption can be provided only by showing the fullest liberation on the part of the testator and abundant good faith on the part of the beneficiary. Will of Polk, supra, at 817.
Finally, an additional requirement was added in Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926), in which the Court held that in order to overcome the presumption of undue influence in confidential relationship cases, grantor/testator must seek independent advice and counsel of a third party devoted wholly to the interests of the grantor/testator. See also, In re Will of Moses, 227 So.2d 829 (Miss. 1969).
Thus, our law may be summarized to state that when the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
(3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest. Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964).
Will of Polk, supra, at 817.
Polk involves the case of the purported existence of a confidential relationship between two sisters, the circumstances of which appellant alleges therein led to undue influence of one over the other in the execution of her will. The Chancellor found that based solely upon a trip taken *31 by the two together, as well as their familial ties, the evidence was insufficient to prove undue influence. We affirmed.
In Norris v. Norris, 498 So.2d 809 (Miss. 1986), Justice Robertson spoke for the Court in an unusual case concerning the question of undue influence in the execution of a deed, in which opinion he voiced the difficulty of defining the burden of establishing the existence of a confidential relationship. See Phillips v. Ford, 250 Miss. 425, 164 So.2d 908 (1964). However, while the definition may be somewhat elusive, this Court has held that the burden of establishing the existence of a confidential relationship lies with the party asserting it. Harris v. Sellers, 446 So.2d 1012 (Miss. 1984); Jeter v. Culp, 343 So.2d 1226 (Miss. 1977); Moore v. Stone, 208 So.2d 585 (Miss. 1968); Green v. Frazier, 242 Miss. 315, 135 So.2d 399 (1961); Lawrence v. Lawrence, 217 Miss. 250, 63 So.2d 825 (1953); Cresswell v. Cresswell, 164 Miss. 871, 884-87, 140 So. 521 (1932).
In support of her contention that a confidential relationship existed between the individual appellees and the testator at the time of the execution of the will, Linda Gallagher presented the trial court with little fact and much speculation. Gallagher alleges that the sexual relationship held between appellee and proponent of the will, Martha Brown, somehow amounted to a confidential relationship sufficient to raise the presumption of undue influence or lack of testamentary capacity at the time of the making of the will. Within the mores of this illicit relationship, Gallagher cites as evidence of confidentiality circumstances involving Brown's traveling with Launius, bathing him (this occurred after the making of the will and during his terminal illness), cooking for him, drinking with him, and finally receiving monetary gifts from him. However, it was shown she made monetary gifts to him.
However, testimony by all involved (including the contestant of the will to some degree) indicated that the testator was apparently financially independent, strong-willed, and emotionally and physically sound at the time the will was executed and up to the time of his death.
The record is devoid of any proof of anything to the contrary: in fact, at the actual time of the making of the will none of Launius' devisees was present. The only knowledge of the instrument they acquired was after its execution  a point too late in time for appellees to suggest successfully alleged undue influence or lack of testamentary capacity.
Because there is no further clear and convincing evidence of proof of a confidential relationship (or, as under the rules, appellant failed to raise any triable fact issues), we do not find that the motions for summary judgment were improperly granted, and accordingly affirm the Chancellor's decision, particularly in view of the fact that at oral argument appellant knew of no other evidence to be presented.

B.
All appellees save one timely filed their motions for summary judgment in keeping with the procedural time requirements as set forth under Rule 56(c). However, under the 10-day rule therein, appellant urges us to reverse based on Martha Brown's late filing of her motion. The facts relevant to this assignment of error are:
3. August 10, 1984  Louise Holmes and the Stephen E. Launius Scholarship Fund serve their Motion for Summary Judgment by mail from Oxford.
September 6, 1984  Gladys Warden serves her Motion for Summary Judgment by mail from Oxford.
September 7, 1984  The Scholarship Fund, Holmes and Warden serve Notice of Hearing on Motions for Summary Judgment for September 11th by mail from Oxford.
September 11, 1984  Gallagher serves and files Response to Motions for Summary Judgment by the Scholarship Fund and Holmes.
September 13, 1984  Martha Brown serves her Motion for Summary Judgment by mail from Natchez.

*32 September 18, 1984  Gallagher serves and files her Amended Response to Motions for Summary Judgment by all proponents.
September 18, 1984  Hearing on Motions for Summary Judgment held.
While we are concerned with this apparent disregard for the rules, we conclude that within the context of the particular facts and circumstances in this case this alleged error amounts to a purely procedural technicality, and one which is disposed of under our Rule 11 on harmless error. Where there has been no miscarriage of justice, an error in a matter of procedure is not reversible.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ.
NOTES
[1] Rule 81(a) reads as follows:

(a) Applicability in General. These rules apply to all civil proceedings but are subject to limited applicability in the following actions which are generally governed by statutory procedures.
... .
(8) Title 91 of the Mississippi Code of 1972;