## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00631-SCT

*CAROLYN ROGERS*

*v.*

*ROBERT TERRY PLEASANT, JR., ROBERT TERRY PLEASANT, JR., EXECUTOR, AND JOE FRANKLIN PLEASANT*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/97 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH E. ROBERTS, JR. |
| ATTORNEY FOR APPELLEES: | JACK G. MOSS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 9/10/98 |
| MOTION FOR REHEARING FILED: | 10/8/98 |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is a will contest arising out of the Chancery Court of Hinds County. Carolyn Rogers filed this action to contest the will of her mother, Littie Jane Pleasant ("Littie"). Littie was survived by her three children, Carolyn Rogers ("Carolyn"), Robert Terry Pleasant, Jr. ("Robert"), and Joseph Franklin Pleasant ("Joseph"). The will at issue in this case was made by Littie on December 18, 1987. The sole devisees under the will were Robert and Joseph.

¶2. On July 7, 1993, Robert filed his Petition to Probate Last Will and Testament. A Decree to Probate Last Will and Testament was entered on July 7, 1993. On July 6, 1995, Carolyn filed her Petition to Contest Will and Objection to Probate of Will alleging that Littie's will was the product of undue influence. The Petition further alleged that Littie lacked testamentary capacity at the time of the making of her will.

¶3. A trial was held on February 13, 1997. On March 31, 1997, the trial court entered its Opinion and Order of the Court. The chancellor found that although a confidential relationship existed between Robert and Littie, Robert had overcome the presumption of undue influence. The chancellor also found that Littie had testamentary capacity at the time of the making of the will. On April 14, 1997,

the trial court entered its Judgment Dismissing Petition to Contest Will and Objection to Probate of Will.

¶4. Carolyn appeals from the judgment of the trial court dismissing her petition to contest Littie's will. Upon a thorough review of the record and briefs, we hold that the trial court did not err in dismissing Carolyn's petition. Carolyn presents one issue for our review which is addressed below.

### I. THE TRIAL COURT ERRED IN DECIDING THAT THE WILL WAS NOT THE PRODUCT OF UNDUE INFLUENCE OR A BREACH OF A FIDUCIARY RELATIONSHIP AND THAT THE TESTATOR HAD SUFFICIENT MENTAL CAPACITY TO MAKE A VALID WILL.

### DISCUSSION OF LAW

¶5. Carolyn conceded in her reply brief that she did not put on competent proof at trial that Littie lacked testamentary capacity, and therefore that issue will not be discussed. The only issues to be decided by this Court are whether Robert was in a confidential relationship with Littie, and if so, whether he overcame the presumption that he exerted undue influence over Littie through the presentation of clear and convincing proof.

¶6. As to confidential relationship, the chancellor found that Robert was in a confidential relationship with his mother. Robert does not deny or attempt to refute that finding, but instead argues that he overcame the presumption of undue influence by clear and convincing evidence.

¶7. In order for Robert to have overcome the presumption of undue influence, the evidence must have been clear and convincing, and must have shown that (A) Robert exhibited good faith in the fiduciary relationship with Littie; (B) Littie acted with knowledge and deliberation when she executed her will, and (C) Littie exhibited independent consent and action. *In re Will of Fankboner,* 638 So. 2d 493, 495 (Miss. 1994)(citing *Murray v. Laird,* 446 So. 2d 575, 578 (Miss. 1984) as modified in *Mullins v. Ratcliff,* 515 So. 2d 1183, 1193 (Miss. 1987)).

¶8. The first factor to be considered in determining whether Robert exhibited good faith in the fiduciary relationship with Littie, is to determine who sought the preparation of Littie's will. *Will of Fankboner,* 638 So. 2d at 495. It is undisputed in this case that Littie was the person who decided to have her will prepared.

¶9. The second factor to be considered concerning good faith is the place of execution of the will and the persons in whose presence the will was executed. *Id.* at 496. The record shows that Littie executed her will in her attorney Graham's office, in the presence of Graham and Guynes, Graham's secretary.

¶10. The third and fourth factors are the consideration or fee that was paid and identity of the person who paid the fee. *Id.* It is undisputed that Littie paid Graham's fee by check.

¶11. The fifth and last factor to be considered in determining good faith is the secrecy and openness given the execution of the will. *Id.* The record reveals that the execution of Littie's will took place in Graham's office before two attesting witnesses, Graham and Guynes. Littie told Graham how she wanted her estate disposed of and he prepared the will at her direction.

¶12. It is this Court's opinion that substantial evidence existed to support a finding that Robert acted in good faith.

¶13. There are four factors to be considered in determining Littie's knowledge and deliberation at the time the will was executed. They are: (1) Littie's awareness of her total assets and their general value, (2) an understanding by Littie of the persons who would be the natural inheritors of her bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect the prior will or natural distribution, (3) whether non-relative beneficiaries would be excluded or included, and (4) knowledge of who controls Littie's finances and business and by what method, and if controlled by another, how dependent was Littie on him and how susceptible to his influence. *Murray,* 446 So. 2d at 579.

¶14. Guynes testified that Littie received investment advice from her attorney, Graham. Graham discovered that Littie had a large amount of money in a non-interest bearing checking account, and suggested that Littie seek advice from an investment counselor. Graham arranged for Littie to meet with a representative of A.G. Edwards, who helped Littie manage her assets more wisely. Thereafter, Littie received monthly checks from A.G. Edwards for about $1500. Guynes testified that Littie knew exactly when she was to receive her check every month, and would call Graham's office if the check was late. Guynes testified that Littie was aware of her assets, income and expenses.

¶15. As to Littie's understanding of who her inheritors were, it is clear that she knew that her three children would inherit her estate. She affirmatively told Graham that she intended to leave her estate to her two sons, and to totally disinherit her daughter. Graham asked Littie to reconsider, and to split her estate equally between her three children, but Littie refused. Littie became angry when Graham tried to change her mind.

¶16. Because no non-relative beneficiaries exist in this case, the third factor is not relevant. As to the final factor, Littie controlled her own money. Guynes testified that at Graham's office, Guynes would fill out checks for Littie, and Littie would sign them. Littie directed her A.G. Edward's representative in investing her money. She stressed to him that she only wanted to make very secure, low-risk investments.

¶17. We hold that the evidence showed that Littie acted with knowledge and deliberation when she executed her will. Littie was described as strong-willed, and it appears that she knew the extent and approximate worth of her assets. Littie controlled her own money, and participated fully in her investment decisions.

¶18. The final factor to be considered in determining whether Robert overcame the presumption of undue influence is whether Littie exhibited independent consent and action. There is every indication in the record that Littie acted independently of Robert. Littie asked Robert to drive her to her attorney's office without telling him the reason for her visit. While there, and while Robert waited outside, Littie directed her attorney to prepare her will. Graham tried to discourage Littie from disinheriting her daughter, but Littie became angry and had her mind made up. Littie was strong willed and knew what she wanted to do.

## CONCLUSION

¶19. Based on the facts in this case, we hold that Robert presented clear and convincing evidence that showed that Littie's will was not the product of Robert's undue influence. The evidence presented sufficiently overcame the presumption of undue influence. Therefore, the judgment of the trial court dismissing Carolyn's Petition to Contest Littie's will is affirmed.

¶20. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J.**


**SMITH, JUSTICE, DISSENTING:**


¶21. The majority, in upholding the validity of the will of Littie Jane Pleasant, concludes that Robert Pleasant was able to overcome the presumption of undue influence by clear and convincing evidence. I remain unconvinced however that Robert was able to overcome the presumption and therefore dissent.

¶22. "In an action contesting a will, a presumption of undue influence arises where there is a confidential or fiduciary relationship." *In re Fankboner*, 638 So. 2d 493, 495 (Miss. 1994). Robert Pleasant clearly maintained a confidential or fiduciary relationship with Littie. Carolyn Rogers testified that Robert repeatedly attempted to coerce their mother into distributing the $750,000 assets of her estate to the children in advance of her death. It is obvious that Robert was aware of the value of Littie's estate. There is no question but that Robert exerted great influence over their mother. Robert transported Littie to her lawyer's office on the date she executed her will. At the time in question, Robert was staying overnight with Littie several nights each week. The record reflects that Robert was considered her closest friend and confidant at that time. Also, Robert ultimately requested that the chancery court appoint him along with his brother as co-conservators of Littie's estate. Carolyn, their only sister, was excluded.

¶23. Considering all the testimony supposedly in support of Robert's position that Littie was competent to make a will, and that she was a strong willed person who knew exactly what she wanted to do, no reason whatsoever was ever testified to as to why Littie disinherited Carolyn. This factor is especially bothersome considering Carolyn's testimony that Littie reassured her that the will provided for Carolyn and Carolyn's handicapped daughter. We should apply the reasoning of this Court in *Fankboner*, wherein the Court stated:

> In those cases where you admittedly have a confidential relations transfer from a dependent to a dominant party, it seems to me that the ultimate test should be something on the order of the following: Excluding the testimony of the grantee, those acting in the grantee's behalf (such as the attorney), and any others who could have a direct or indirect interest upholding the transfer (such as grantee's family), is there any other substantial evidence, either from the circumstances or from a totally disinterested witness from which the court can conclude that the transfer

instrument represented the true, untampered, genuine interest of the grantor? If the answer to this question is yes, then it becomes a question of fact whether or not there was undue influence. If the answer is no, then as a matter of law the transfer is voidable.

*Fankboner*, 638 So. 2d at 495 (quoting *Vega v. Estate of Muller*, 583 So. 2d 1259, 1275 (Miss. 1991) (Hawkins, P.J., dissenting)). Applying *Fankboner*, and excluding the testimony of those witnesses including the attorney, and both Pleasant grantees, what is the answer to the question. The answer is obviously no, thus as a matter of law, the transfer under the will was voidable.

¶24. Carolyn's testimony states that less that five months after the execution of the will by Littie, Robert and Joseph, the sole devisees under Littie's will, filed a petition for a conservatorship. In the petition, both allege that Lillie was advanced in age, ill to such a degree that she was physically unable to manage her affairs, and in need of a conservator to take charge of her estate and manage it. Robert and Joseph, excluding Carolyn, asked the court to appoint the two of them as co-conservators with mere notice of the proceedings provided to Carolyn.

¶25. In support of the petition for a conservatorship is the attached affidavit of psychologist, F.J. Eicke, who diagnosed Littie as having degenerative dementia. Eicke concluded that Littie was not capable of independent living and carrying out life sustaining daily activities. Dr. Michael H. Bross also examined Littie and found her to be suffering with a severe mental deficit and also diagnosed her as having degenerative dementia. It is more than noteworthy that during the trial, Robert himself testified that Littie's condition of dementia had grown worse over an extended period of the year prior to the conservatorship being established. This fact alone sufficiently questions whether Littie was subject to influence by Robert when she executed the will and whether the burden was overcome. However, Robert's testimony coupled with the two experts creates very strong evidence that Littie was incompetent at the time she made her will, or at the very least, was highly susceptible to influence by Robert. Not surprisingly, it is noteworthy that there was no psychological or medical examination conducted upon Littie shortly before or on the date that she executed her will. Had this been done, there would be little question about her capacity to execute a will on the date in question, or how susceptible she was to Robert's influence. *See Fankboner*, 638 So. 2d at 496. As it is, the entire situation is suspect. The presumption was not overcome by sufficiently clear and convincing evidence. I respectfully dissent.

**MILLS, J., JOINS THIS OPINION.**