BRIDGES, P.J.,
Dissenting.
¶ 32. Although I agree with the majority that the decedent had testamentary capacity, I disagree with the majority’s opinion that the chancellor correctly applied the law in his finding that there was no undue influence in the making of the 1995 will. The chancellor never addressed whether a confidential relationship existed before he rendered his opinion regarding undue influence. In my opinion, Carolyn Newsom had a confidential relationship with her uncle, Isaac Crutcher, and thus she had the burden of rebutting, through clear and convincing evidence, that she did not unduly influence her uncle. Though the factors in determining undue influence were alluded to in the closing arguments of the parties’ attorneys, there is no indication that the chancellor addressed such factors, and, in my opinion, Newsom did not successfully rebut the presumption of undue influence. The chancellor made some disconnected and somewhat unrelated statements during the recitation of his opinion concerning facts outside those testified to in the case without relating them to the facts of this case. Appropriate findings may well have helped me determine his direction in this case. Therefore, I respectfully dissent.
¶ 33. The Mississippi Supreme Court has long recognized the importance of establishing the existence of a confidential relationship:
Whenever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character. A confidential relationship such as would impose the duties of a fiduciary does not have to be a legal one, but may be moral, domestic or personal. The relationship arises when a dominant, overmastering influence controls over a dependent person or trust justifiably reposed. Such a relationship must be shown before we will scrutinize one’s right to give away his property....
Mullins v. Ratcliff, 515 So.2d 1183, 1191-92 (Miss.1987) (citations omitted). Furthermore, the party who establishes the benefit of having a confidential relationship must clearly establish his entitlement through clear and convincing evidence. Norris v. Norris, 498 So.2d 809, 814 (Miss.1986); Gillis v. Smith, 114 Miss. 665, 75 So. 451, 453 (1917). Whenever a will is contested, there is a presumption of undue influence where there is a confidential or *971 fiduciary relationship. Mullins, 515 So.2d at 1192.
¶ 34. Here, a confidential relationship has been established. Carolyn Newsom testified that she suggested to Crutcher that he should make a will. Carolyn also chose the attorney, Wallace Anderson, a high school classmate, to draft the will. She also cared for Crutcher while he resided in her mother’s home and while he was unable to physically take care of himself. During this time, for a period of nearly three years, Carolyn assisted in handling his financial affairs. Additionally, she and her husband were the sole providers of transportation for Crutcher during his visits to Anderson’s law office on three occasions (once in 1991, twice in 1995) for the purpose of drafting and executing a will. The judge could have and indeed should have declared that a presumption of undue influence existed at this point, requiring the proponents of the will to show, by clear and convincing evidence, that such was overcome.
¶ 35. In order for Carolyn to overcome this presumption of undue influence, the evidence must have shown by clear and convincing evidence that (A) she exhibited good faith in the fiduciary relationship with Crutcher; (B) Crutcher acted with knowledge and deliberation when he executed the wills; and (C) Crutcher exhibited independent consent and action. Murray v. Laird, 446 So.2d 575, 578 (Miss.1984) as modified in Mullins, 515 So.2d at 1193.

A. Good Faith

¶ 36. Under the first prong of the test, we must determine whether Carolyn exhibited good faith in her relationship with Crutcher. There was no testimony that Carolyn abused her fiduciary duty or mishandled Crutcher’s finances. However, proper handling of funds is not enough to establish good faith. The supreme court has used a simple inquiry to address this issue:
Excluding the testimony of the grantee, those acting in the grantee’s behalf (such as the attorney), and any others who could have a direct or indirect interest in upholding the transfer (such as grantee’s family), is there any other substantial evidence, either from the circumstances, or from a totally disinterested witness from which the court can conclude that the transfer instrument represented the true, untampered, genuine interest of the grantor? If the answer to this question is yes, then it becomes a question of fact whether or not there was undue influence. If the answer is no, then as a matter of law the transfer is voidable.
Matter of Will of Fankboner, 638 So.2d 493, 495 (Miss.1994) (quoting Vega v. Estate of Mullen, 583 So.2d 1259, 1275 (Miss.1991) (Hawkins, P.J., dissenting)).
¶ 37. In this case, the proponents offered testimony only from family members who were named beneficiaries in the will. No testimony from a totally disinterested witness was offered to prove that the will represented the true interest of the grant- or. Wallace Anderson, the attorney who drafted both wills and was also a subscribing witness to both wills, apparently testified through deposition testimony. However, his testimony was absent from the record, save for the selected excerpts that were read during the closing arguments of the contestants’ attorney, Drue Birmingham. This cannot be considered as evidence and the judge certainly should not have given credence to it. Furthermore, as Anderson was named as a defendant in the case, we cannot call him disinterested. Two other subscribing witnesses to the wills, Toni S. Luther, who appears from the record to have been employed by *972 Anderson, witnessed the 1991 will, and Brenda W. Anderson, the wife of Wallace Anderson, witnessed the 1995 will, signed an affidavit as to the testator’s capacity at the time the wills were signed. However, neither of these two witnesses were called upon by Newsom in her rebuttal of the presumption of undue influence. We look, therefore, to the circumstances surrounding Crutcher’s life at the time of the execution of both wills.
¶ 38. At the time of the 1991 will, Crutcher lived alone in his home. His physical condition had not deteriorated to the point of needing constant help. His sister, Agnes Brown, tended to his financial affairs, and many family members, including his sisters and great nieces and nephews, saw him on a daily basis. After Crutcher’s stroke in 1993, he lived with his niece, Dorothy. There, Dorothy, Carolyn, and Diane Mason cared for his daily needs. There is testimony that Agnes Brown relinquished her duties of tending to Crutch-er’s financial business to Dorothy and Carolyn, and the record does not indicate that this transfer was anything but amiable. Carolyn, along with her sister and brother, according to testimony, were close to the decedent, grew up in the decedent’s home, saw the decedent on a daily basis, lived within close proximity of the decedent, and physically tended to him.
¶ 39. To further determine if Carolyn Newsom acted in good faith at the time of the execution of the wills in question, we must also examine four factors: (1) the identity of the initiating party; (2) the place of execution and the persons present at the time of the execution; (3) the consideration or fee for the will; (4) the party that paid for the will; and (5) the secrecy or openness surrounding the execution of the will. Fankboner, 638 So.2d at 495-496.
¶ 40. Carolyn testified that she suggested to Crutcher that he should make a will in 1991. She explained that she offered the suggestion to make sure that “someone gets the land.” She then testified that Crutcher asked her to choose a lawyer for the drafting of the will. Carolyn admits that she procured Anderson because she personally knew him and his office was conveniently located. No other family members testified that they were aware that Crutcher had made a will.
¶ 41. Carolyn also testified as to the circumstances surrounding the 1995 will. She testified that her grandmother, Crutcher’s sister, had died and left a will that disinherited her mother, Dorothy Dodson. At the time, Crutcher was living with Dorothy and was being cared for by both Dorothy and Carolyn. Carolyn testified that her grandmother’s will caused animosity within the family, and she admitted having a discussion with Crutcher about the issue. She opined that he simply wanted to change his will. Again, there was no other testimony as to why Crutcher changed his will.
¶ 42. For the second factor, we examine the location of the will’s execution. The will was drafted and executed in the law offices of Wallace Anderson. Both wills, according to the testimony of Anderson and Carolyn, were drafted in the back offices, away from Carolyn, where no immediate influence could be imposed upon Crutcher. However, Carolyn and her husband were present in the room at the signing of the 1995 will. She testified that she saw Crutcher sign his name with an “X,” and that she was notified that she was named as the will’s executrix.
¶ 43. The third and fourth factors surround the payment of the attorney’s fees for the drafting of the will. The record indicates that $100 was charged for the 1995 will, and was silent as to the fee for the 1991 will. No witness, including Anderson or Carolyn Newsom, kept rec *973 ords or statements for the payment. Furthermore, neither Anderson nor Carolyn could remember how the payment was procured. It is very possible that Carolyn may have had no involvement in the payment of the 1991 will. At that time, Crutcher was living alone and Carolyn had not yet taken over the financial duties of her great uncle. She may have not been concerned with the payment of the fee. However, during the execution of the 1995 will, there is conflicting testimony as to exactly when Crutcher’s sister, Agnes Brown, turned over Crutcher’s financial business to Dorothy and Carolyn. Carolyn testified that she often helped with Crutcher’s financial affairs. She paid many of his grocery bill, utility bills, his lawn mower note, and his taxes, yet she could not recall how the attorney’s fees were paid. There was no other testimony or proof as to the payment of the fees.
¶ 44. Lastly, we examine the secrecy or openness surrounding the execution of the wills. Both wills were drafted and executed in the private inner offices of Anderson’s office. However, both executions were observed by the requisite number of uninterested witnesses. The fact that other family members may not have been present or may not have known about the existence of the wills has no consequence on this factor. “[T]he actual issue to be addressed is whether the physical place the will was executed was in plain view of the witnesses.” In re Estate of Smith, 722 So.2d 606, 613 (¶ 23) (Miss.1998). The only subscribing witness testimony in the record is from the testimony of Anderson, which was read during closing arguments. No other subscribing witness testified during the trial. The only other eyewitnesses to the 1995 will was Carolyn and her husband Ozell, both of whom are beneficiaries.

B. Knowledge and Deliberation

¶ 45. The second prong of the Murray test requires that Crutcher must have acted with knowledge and deliberation when he executed the wills. There are four factors to consider: (1) Crutcher’s awareness of his total assets and their general value, (2) whether Crutcher understood who would be the natural inheritors of his bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect the prior will or natural distribution, (3) whether non-relative beneficiaries would be excluded or included and, (4) the knowledge of who controls his finances and business and by what method, and if controlled by another, how dependent is the grant- or/testator on that person and how susceptible is he to that person’s influence. Murray, 446 So.2d at 579.
¶ 46. Both Carolyn and Anderson provided testimony that, during the preparation of both wills, Crutcher spent several hours alone with Anderson. While it appears from the wills themselves that Crutcher understood the nature of his property and who would be the beneficiaries, the wills are the only evidence we have to go by. Conflicting testimony was offered by both sides regarding whether or not Crutcher understood the extent of his finances during the final years of his life. Even before his second stroke in 1993, Crutcher depended upon others to manage his finances. Anderson’s testimony indicated that he did not ask Crutcher about the extent of his holdings. Therefore, besides Carolyn’s testimony, there is no indication that Crutcher had full knowledge and understanding.

C. Independent Consent and Action

¶ 47. The supreme court has stated that the best way to prove independent consent and action is by the advice of a competent *974 person disconnected from the grantee and devoted solely to the testator’s interest. Smith, 722 So.2d at 613. In most cases, an attorney is qualified to give that independent advice. However, in this case, there is cause for suspicion. Carolyn procured Anderson as Crutcher’s attorney. Though separated from Crutcher during the drafting of the two wills, Carolyn was nonetheless present in the offices. Anderson was a high school classmate of the Newsoms. While that itself is not enough to waive a red flag, it is enough, when combined with other peculiar circumstances, to raise our level of suspicion. The issue is further complicated by the fact that while no family member from either the proponents or contestants had ever seen Crutcher sign his name, Anderson was the only person who testified as to the authenticity of Crutcher’s signature on the 1991 will.
¶ 48. In his closing argument, Keith Treadway, attorney for the proponents, surmised that his client had the burden of proof, but could only predicate his proof by the testimony of Wallace Anderson. Since we do not have the full deposition testimony of Anderson before us, and because the chancellor relied heavily on this testimony, I believe that the chancellor should have better delineated his findings that no undue influence existed. Because Carolyn Newsom had a confidential relationship with Isaac Crutcher, she had the burden of rebutting the presumption that undue influence existed. Wallace Anderson is a defendant in this ease, and no other subscribing witness testified.
¶ 49. The following questions arise and are unanswered from the record in this case:
1.Which of the two wills did the chancellor opine as being the will for probate in this matter?
2. What testimony did he rely upon to establish this and which one of the said wills was made by the testator free of undue influence?
3. What evidence overcame the presumption of undue influence raised by the foregoing facts?
¶ 50. The chancellor himself in his oral bench opinion stated that he was bothered by the testimony- — certainly I am. All of the foregoing appears to raise a presumption of undue influence and certainly raises a question to this writer as to whether same was clearly and convincingly proved by sufficient testimony. Appropriate findings would establish this, relieving the mystery in my mind as to such presumption. Further, it would be unfair, if not prejudicial, to the objector and opponents (of whichever will is probated) to affirm the chancellor and deny them justice without a clear showing.
¶ 51. Our supreme court has repeatedly stated that appropriate findings of facts and conclusions of law should be made in complicated cases, as well as in cases where it is not clear from a reading of the testimony, how the chancellor resolved the case. Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 239 (Miss.1987). We, as an appellate court, are required by law to follow the mandates and precedents of the supreme court. Apparently, the majority relies on two sentences in the order of the court dated December 30, 2002, and filed May 19, 2003, those shown as paragraphs II and III, without those appropriate findings.
¶ 52. Therefore, it is my opinion that, with regard to the factors delineated above, and without the benefit of Anderson’s full testimony, Newsom did not provide sufficient evidence to rebut the presumption of undue influence, and, therefore, I would reverse and remand the case to the chancery court for a new trial *975 to establish whether these factors can be resolved, or, at least remand to make proper findings in accordance with the aforementioned factors.